**TEXAS EMPLOYERS' INS. ASS'N v. SLOAN et al.**

No. 7553.

Court of Civil Appeals of Texas. Austin.

Feb. 12, 1931.

Rehearing Denied March 4, 1931.

**320**

Harry P. Lawther, of Dallas, Critz & Woodward, of Coleman, and Jas. P. Swift and Wm. M. Cramer, both of Dallas, for appellant.

J. K. Baker, of Coleman, and F. M. Fitzpatrick and W. V. Dunnam, both of Waco, for appellees.

BAUGH, J.

This suit arose under the Workmen's Compensation Act. The appellees, being the father and two sisters of W. A. Sloan, deceased, alleged that W. A. Sloan received accidental injuries in Coleman county, Tex., in the course of his employment, which resulted in his death. He was employed at the time by Behrens Drug Company of Waco, Tex., a subscriber under the Compensation Act, and with another employee had been sent to Talpa, in Coleman county, to install in a drug store there certain fixtures sold by said company. Judgment was rendered for appellees on answers to special issues submitted to the jury. These questions, which reflect the issues involved, the jury answered as follows:

1. That W. A. Sloan sustained a personal injury while installing a soda fountain at Talpa on May 9, 1929.

2. That he received said injury in the course of his employment.

3. That it naturally resulted in pneumonia and his death.

4. That his sisters Emma Katherine and Frances Sloan were then dependent upon his labor for support.

■■ Appellant's first contentions are that there was no evidence as a matter of law to sustain the jury's findings; and that their findings are against the great preponderance of the evidence. The uncontroverted evidence shows that his sisters were dependent upon him at the time of his death. It also shows conclusively that the injury, if sustained by him as alleged, occurred in the course of his employment.

Disregarding, as is our duty under repeated decisions, all evidence adverse to the jury's findings, and considering only that in support thereof, we find testimony to show that the deceased was 21 years of age, weighed about 180 pounds, and was unusually well developed. That he left Waco in good health and jovial on the morning of May 8th, arrived at Talpa that afternoon, and worked at installing soda fountain fixtures there until about midnight. That some of said fixtures were very heavy, one part weighing 1,750 pounds; and that some of the pieces of marble used weighed from 200 to 400 pounds. That next day, at about 11 a. m., while lifting one of the heavy pieces of marble, he gave an outcry, dropped the marble to the floor, stated that he had hurt himself lifting it, placed his hand on his back over his right lung, a frown came over his face, he turned pale, walked away, and sat down for awhile, then went to and sat in the automobile, repeating several times that he had hurt himself lifting. That he did no more work after the incident complained of; and was seen lying down on the back seat of the car while his fellow employee drove towards Coleman that afternoon. That he and his colaborer stopped at Goldthwaite, about 90 miles from Talpa, that night, at which time he had a cough which he had not had before. That he arrived in Waco on May 10th, was visited by a physician, and sent to a hospital on May 11th, with temperature 104 degrees and a pulse of 110. That he was emitting bloody sputum, and aspiration produced an amber colored fluid from the pleural cavity. An X-ray showed his right lung consolidated on May 13th; and that his condition gradually grew worse from May 11th to the 18th, on which day he died from pneumonia. The foregoing substantially states the facts set forth in a hypothetical question, based on the evidence, propounded without objection, to a physician on which to base his opinion. Based thereon the physician testified that in his opinion Mr. Sloan ruptured a blood vessel in his lung while lifting the heavy marble slab; that the leakage into the lung caused the high temperature and coughing; and that the consolidation of the lung and the pneumonic condition there was the natural result of such injury. This was ample testimony to indicate that Sloan had received some sort of injury either to his back or internally while lifting the marble slab on May 9th.

As to resultant pneumonia two physicians testified. The physician who treated him at Waco was employed by appellant insurance company. He testified that Sloan's was an unusual case of pneumonia and difficult to diagnose; that in his opinion Sloan's pneumonia was caused in the usual way—from cold and exertion. There was no evidence that Sloan had any cold when working at Talpa. This physician's testimony indicates that he was adverse if not hostile to appellees, and that he had refused to give their attorneys any information relative to Sloan's illness and death because he wanted to stay away from the courthouse and because he was employed by the insurance company. He did testify, however, that heavy lifting would throw a heavy strain on the lungs; and that rupture of a blood vessel in the lungs would probably result in pneumonia.

The foregoing was clearly sufficient to go to the jury and to sustain their findings on the issues submitted.

■ Appellant next complains of failure of the trial court in his charge, as requested by appellant, to preface each of the special issues submitted with the instruction, "Do you find and believe from a preponderance of the evidence" the fact inquired about. This form of presentation of special issues has

been repeatedly approved and is proper. It is, however, not exclusive. Nor do we think the charge submitted was a general charge. The instruction complained of was: "You will answer each and all of the issues submitted to you upon the preponderance of the evidence." The case of Texas & P. Ry. Co. v. Bufkin (Tex. Civ. App.) 19 S.W.(2d) 343, cited by appellant, follows the rule announced by this court in Wooton v. Jones (Tex. Civ. App.) 286 S. W. 680; M.-K.-T. Ry. Co. v. Thomason (Tex. Civ. App.) 3 S.W.(2d) 106; (writ ref.) and Davis v. Morris (Tex. Com. App.) 13 S.W.(2d) 63, in each of which the charge placed upon the plaintiff the burden of proving the material allegations of his petition or the facts relied upon for a recovery. Such an instruction is clearly a general charge. In the instant case, however, each of the issues submitted was clear and simple, called for an affirmative finding, and, we think, carried its own burden. In any event the charge complained of placed the burden on neither party expressly, but met the rule announced in Wooten v. Jones, and in M.-K.-T. Ry. Co. v. Thomason by pointing out to the jury where, and not upon whom, the burden of proof rested.

■ Nor is there any merit in appellant's proposition that special issue No. 2 was duplicitous. This issue was: "Did such injury, if any, naturally result in pneumonia and death of W. A. Sloan?" It was admitted that Sloan's death resulted from pneumonia immediately following his return to Waco from Talpa. The only issue presented to the jury, therefore, by this inquiry was whether the pneumonia was the natural result of the injury.

■■ The sum awarded was not excessive. The deceased had been employed by the Behrens Drug Company during the whole of the year prior to his death at a salary of $90 per month. Subsection 5 of section 1 of article 8309, R. S., provides that in such case the average weekly wage shall be one fifty-second part of the annual wage; and it was immaterial whether his working week was 5½ days or 6 days. Petroleum Casualty Co. v. Williams (Tex. Com. App.) 15 S.W.(2d) 553. It was not necessary to submit that issue to the jury. Section 8, art. 8306, R. S. 1925, fixes the amount of recovery.

■ The attorney appointed as guardian ad litem for the minor plaintiff, Emma Katherine Sloan, in his argument to the jury, over objection of appellant's counsel, was permitted to explain to the jury the effect of their answers to the special issues submitted to them, and how the compensation would be divided if they answered all of said issues "Yes." He also stated to the jury, "If you want these sisters of the deceased to recover to answer all issues 'Yes.'" The trial court's qualification on the bill of exception to the argument last above set out was: "Objection to argument was made without interrupting counsel and no charge relative to such argument was asked."

Under decisions on similar if not identical circumstances such argument has been held to be reversible error. Humble Oil & Ref. Co. v. McLean (Tex. Com. App.) 280 S. W. 557; Petroleum Casualty Co. v. Williams (Tex. Com. App.) 15 S.W.(2d) 553; Fidelity Union Cas. Co. v. Cary (Tex. Com. App.) 25 S.W.(2d) 302. Nor was it necessary for appellant to request an instruction to the jury not to consider such argument. When the court's attention was called to the improper argument and objection made thereto, it became the duty of the court to instruct the jury not to consider it.

■ Appellant also insists that the proof showed that the dependent sisters had a stepmother living, and were therefore precluded from recovering anything under section 8a of article 8306, R. S. No pleading of either party raises that issue. The only testimony on that point was that of the minor sister that after the death of her mother, some eleven years before, her father had married again. There was no proof as to whom, whether such second wife was still living, and, if so, whether with her father. The proof was insufficient to establish as a fact the contention made by appellant. Since, however, the question will doubtless recur upon another trial, we have considered it here.

■ Prior to the 1923 amendment to section 8a of article 8306, R. S., the right of a stepmother to participate as a beneficiary depended upon proof of her dependency upon the injured employee. The Legislature by that amendment made her a beneficiary, regardless of her dependency. The provision of the act that distribution of the compensation among the beneficiaries should be made according to the law of descent and distribution was unchanged. Under the law of descent and distribution the stepmother would take nothing. The act consequently contains ambiguity as to the legislative intent if not a clear conflict. At least there is an inconsistency in the statute. This inconsistency obtained just as much prior to the amendment of 1923 as it does now. In construing the law as it was prior to the 1923 amendment, the Commission of Appeals held in Southern Surety Co. v. Weaver, 273 S. W. 838, 841, that "this apparent inconsistency should not be held to abrogate the plain provision of the statute that the compensation shall be distributed among the beneficiaries according to the law of descent and distribution." The same question was again presented to the Commission of Appeals in Security Union Casualty Co. v. Kelley, 6 S.W.(2d) 741. While the Commission of Appeals in the latter case declined to pass expressly on the question, a

322

recovery by the stepmother was affirmed, and the result is, of necessity, to abrogate the laws of descent and distribution to that extent. We follow, therefore, the holding of the Court of Civil Appeals (299 S. W. 286, 288), in that case, which evidences to our mind a reasonable and logical interpretation of the legislative intent, and the only interpretation by which the act can be made effective as to the stepmother, to the effect that "the stepmother stands in the place of the mother, and is entitled to that portion of the compensation that the mother would receive, if living. * * *" It follows, therefore, that the father of deceased and his stepmother, if she were living at the time of his death, would be entitled to all of said compensation to the exclusion of the dependent sisters.

The stepmother could, we think, waive her rights in their behalf, or disclaim any right to such compensation, and permit the award as made by the trial court. Certainly the appellant would be in no position to complain in such case.

For the reasons stated, the judgment of the trial court is reversed, and the cause remanded for another trial.

Reversed and remanded.