**AMERICAN GEN. INS. CO. et al. v. RICHARDSON et al.**

No. 8855.

Court of Civil Appeals of Texas. Austin.
Sept. 29, 1939.

Rehearing Denied Oct. 18, 1939.

Vinson, Elkins, Weems & Francis and C. M. Hightower, all of Houston, for American Gen. Ins. Co.

I. N. Jett, of Smithville, and Walter Greig and Cofer & Cofer, all of Austin, for Van Dorn Richardson, Jr.

Jesse J. Bartlett, and Alfred M. Scott, both of Austin, for Lucinda Richardson.

McCLENDON, Chief Justice.

This is a workmen's compensation case. The question of leading importance is whether the surviving wife of the deceased father of a deceased employee, who is not the mother of the employee, and who, after the death of the employee's father remarries, but is later divorced, is the stepmother of the employee within the meaning of Sec. 8a of Art. 8306, R.C.S., as amended in 1923.

The employee, Roy Kyle Richardson, to whom we refer as Roy Kyle, was killed while working in the course of his employment on January 18, 1938. His employers carried workmen's compensation insurance with appellant insurance company. His mother had died sometime prior to 1905, in which year his father, Van Dorn Richardson, Sr., married appellee Lucinda Richardson. At that time Roy Kyle was an infant child and his brother, appellant Van Dorn, Jr. (referred to as Van Dorn), was 10 years old. His father and Lucinda lived together as man and wife until the father's death in 1922. Lucinda married Chester Brothers in 1928 and divorced him in 1934. She never married again. While not affecting the legal rights of the parties, we add that at the time of Lucinda's marriage in 1905, the father had 13 children, "eleven of whom (including Roy Kyle) were living at home and they grew to manhood and womanhood in the home"; and the record shows that Roy Kyle contributed to Lucinda's support after the death of his father and up to the time of his death. Both Lucinda and Van Dorn (and others not here involved) applied to the Industrial Accident Board for an award of compensation against the In-

surance Company; the former on the ground that she was the stepmother and the latter on the ground that he was a dependent brother of Roy Kyle at the time of his death. The Board disallowed Van Dorn's claim but allowed that of Lucinda, fixing the amount at $12 per week for 360 weeks. From this award the Insurance Company and Van Dorn separately appealed to the district court, where the case was tried to a jury upon special issues. Upon findings to the effect that Van Dorn was not a dependent of Roy Kyle and that his average weekly wage was $12, judgment was rendered denying recovery to Van Dorn and awarding to Lucinda $7.20 per week for 360 weeks. From this judgment the Insurance Company and Van Dorn have separately appealed.

The contention, asserted by both appellants, that Lucinda was not the stepmother of Roy Kyle at the time of his death, within the meaning of the statute, is grounded upon two propositions, substantially stated as follows:

1. The affinal relation between Lucinda and Roy Kyle was severed by the death of Roy Kyle's father in 1922.

2. In any event such relation was severed by the remarriage of Lucinda in 1928; and was not reestablished by her divorce in 1934.

We had occasion to pass upon a closely analogous question to that involved in the first proposition in the recent case of Lewis v. O'Hair, 130 S.W.2d 379, 380, wherein we held that "wife of a son" within the meaning of the inheritance tax law included the widow (surviving wife) of a deceased son. In that case we said:

"The laws of descent and distribution afford no real analogy; for inheritance, except as to husband or wife of decedent (who under the common law were regarded as one), is by blood relation alone. Appellee was not a legal heir of either of the donors; and this regardless of whether Will O'Hair were dead or alive, and irrespective of the fact that she was the mother of his son.

"Nor do we think the holdings with relation to laws prohibiting marriage between those related within certain affinal degrees furnish a pertinent analogy. Our problem here is to ascertain the legislative intent from the statutory language employed; and is not controlled by the existence vel non of a legally recognized affinal relationship."

A well considered note upon the subject, "Death or divorce as affecting relationship by affinity as regards insurance," will be found in 99 A.L.R. 593 et seq. We do not consider it necessary to review the authorities in other jurisdictions upon this subject. They are by no means uniform; and are ably digested in the briefs in this case.

The present Sec. 8a of Art. 8306 as it appeared in the 1917 amendment of the Act (Art. 5246-15 Vernon's Civ. & Crim. Stat.1918 Supp.) included among the beneficiaries of deceased employees dependent parents and dependent stepmothers; and provided for distribution of benefits according to the laws of descent and distribution. In construing this provision, the Commission of Appeals held in Southern Surety Co. v. Weaver, 273 S.W. 838, that the stepmother could not recover as against dependent brothers and sisters, on the ground that she was not an heir of deceased under our laws of descent and distribution. In that case deceased was survived by his dependent father and stepmother, and dependent brothers and sisters; and the recovery was awarded ½ to the father and ½ to the brothers and sisters. Under that construction of the 1917 Act, the dependent stepmother could only recover where there was no beneficiary of any degree of consanguinity whatever.

In 1923 Sec. 8a was amended in its present form so as to include as beneficiaries "parents and stepmother, without regard to the question of dependency." Acts 1923, p. 384. The same provision with reference to distribution according to the laws of descent and distribution was retained.

In Security Union Casualty Co. v. Kelley, Tex.Com.App., 6 S.W.2d 741, the Commission affirmed a judgment of the Court of Civil Appeals awarding ½ of the recovery to the stepmother (the father being dead) and ½ to dependent brothers and sisters. The opinion adverts to the Weaver case as having been decided prior to the 1923 amendment.

Justice Baugh, writing for this court in Texas Employers' Ins. Ass'n v. Sloan, 36 S.W.2d 319, 322, error dismissed, held that where both the father and stepmother survived the latter would take to the exclusion of the dependent brothers and sisters. The following quotation embodies the basis of the holding: "We follow, therefore, the holding of the Court of Civil Appeals (299 S.W. 286, 288), in that [the Kelley] case, which evidences to our mind a reasonable and logical interpretation of the legislative intent, and the only interpretation by which the act can be made effective as to the stepmother, to the effect that 'the stepmother stands in the place of the mother, and is entitled to that portion of the compensation that the mother would receive, if living. * * *' It follows, therefore, that the father of deceased and his stepmother, if she were living at the time of his death, would be entitled to all of said compensation to the exclusion of the dependent sisters." This holding has never been questioned.

It is to be observed that in the Kelley case the father was dead and his widow was allowed recovery on the ground that she was the stepmother. Appellants contend that the only question raised in that case was whether a stepmother could recover in any event where there were dependent brothers and sisters. It is true that this was the only issue discussed; and it may be that the question at bar was not considered. It was, however, necessarily involved.

 Independently, however, of the extent of the authoritative effect of that decision, we believe it was the legislative intent to place the stepmother in the same category in every respect as the mother in so far as concerns the benefits of the Act; and that for this purpose the relation was no more severed by death of the father in the one case than in the other. The law does not permit inquiry into the question whether the mother or the stepmother has performed adequately or at all her maternal duty toward the deceased, or whether filial affection and the incident impulse to contribute to her support and happiness existed in fact or was due. Based upon the generality of cases the same considerations which extend the benefits of the Act to a widowed mother would extend them also to a widowed stepmother. The fact that the father was dead would render these considerations all the more impelling in either case. We quote, in this regard, from the analogous case of Lewis v. O'Hair, above: "In the generality of cases—and in classifying for taxing purposes only the generality can be taken into account—the considerations which would motivate a father- or mother-in-law to provide for the daughter-in-law would be at

least as cogent after as before the death of the son. So also would be the considerations motivating legislative classification in this regard. These considerations are so obvious as not to require statement or elaboration."

Appellant Insurance Company cites a hypothetical case in which, due to a number of successive marriages and divorces of the father, the employee would be survived by several living stepmothers. Other hypothetical situations might be cited in some of which the employee would be survived by father, mother, and stepmother. The difficulty of applying the statute in rare and exceptional situations should not militate against a construction of it, as applied to the generality of cases, in accordance with the manifest objective of the legislature in including "stepmother, without reference to dependency," as a beneficiary under the Act.

■ If we are correct in holding that the statute places the stepmother in the same category as the mother as regards its benefits, and that, for the purposes of the statute, death of the father does not sever the affinal relation; it follows that that relation is not severed by subsequent marriage of the stepmother. The considerations that would deprive the stepmother of the benefits of the act upon her remarriage would apply with equal force to the mother who remarries. A condition that would not affect the consanguinal relation should not be held to sever the affinal relation. This, at all events, unless there were some valid and impelling reason in the situation for the distinction,—a reason which we do not perceive. The loss upon remarriage by the surviving wife of control over community property presents no analogy to the issue at bar. Where the surviving wife qualifies as community survivor, by express statute her rights as such cease upon remarriage. Art. 3680. And by analogy her equitable powers also cease to exist. Auerbach v. Wylie, 84 Tex. 615, 618, 19 S.W. 856, 20 S.W. 776. This holding is based upon the wife's coverture and consequent incapacity to contract, convey, etc.

"The powers of the surviving wife ceased with her widowhood, as well with reference to the equitable as the legal title to community property. Her freedom of agency is, in the eyes of the law, so absorbed in the will of her husband that she is deemed to be incapacitated 'to successfully wind up the connubial partnership she has so effectually put behind her.'" Auerbach v. Wylie, 84 Tex. 615, 618, 19 S.W. 856, 857, 20 S.W. 776.

"The powers, however, if suspended by remarriage, again become active upon divorce, or death of the second husband, or perhaps upon the existence of any fact authorizing the wife to act as a feme sole, like abandonment." Speer on Marital Rights, 3rd Ed., p. 857, citing King v. Summerville, 98 Tex. 332, 83 S.W. 680.

Two of the three remaining assignments of error of the Insurance Company complain of the insufficiency (1) of Lucinda's pleading and (2) of the evidence to support a finding of the average weekly wages of deceased.

■ There was no specific pleading of average weekly wage. The petition alleged, however, that Lucinda appeared before the Board and offered evidence establishing her claim and the Board "as a result thereof * * * pursuant to the terms and provisions of the Workmen's Compensation Act of the State of Texas, made and entered a final ruling, award and decision in favor of the defendant Lucinda Richardson * * * against the plaintiff herein, for the definite period of 360 weeks at the rate of $12.00 per week," etc. The prayer was for judgment "in the sum of $12.00 per week, for 360 weeks with interest." This pleading clearly alleged an indebtedness of the Insurance Company to Lucinda under the provisions of the Act, on account of the death of Roy Kyle in the sum of $12 per week for 360 weeks.

■ "As against a general demurrer it is not necessary to set forth the method employed in computing the average weekly wages. If the amount claimed as compensation is shown, objection that no facts are alleged as a basis for computing the average weekly wages must be raised by a special exception." 45 Tex.Jur., pp. 657-659, and supporting authorities cited in notes 17 and 18.

■ The evidence was sufficient to support the finding. Since its sufficiency is questioned only as a matter of law it would serve no useful purpose to encumber our opinion with its statement in detail. We have carefully considered the record in this regard and adopt the statement therefrom in appellee Lucinda's brief, pp. 22-26. The accuracy of this statement has not been challenged.

■ The remaining assignment of error of the Insurance Company is to the effect that Lucinda's right to compensation was not established because the undisputed evidence showed that Roy Kyle had been married and there was no evidence that the marriage had been dissolved by death or divorce, or that his wife had abandoned him without cause for a period of three years before his death.

There was no pleading by any party raising this issue. The evidence upon the subject was elicited by the Insurance Company in cross examination of Lucinda and some of the other relatives of deceased. In substance it was this: Roy Kyle had been married at one time and lived with his wife in Grandview until 1929 when they separated, apparently permanently; why or under what circumstances no one appeared to know. After the separation in 1929 Roy Kyle moved to Austin and lived there with various of his relatives until his death. As to whether the wife was still living, or there was a divorce, or she abandoned him without adequate cause, no one who testified appeared to have any knowledge. An analogous situation was presented in the Sloan case, above, from which we quote: "Appellant also insists that the proof showed that the dependent sisters had a stepmother living, and were therefore precluded from recovering anything under section 8a of article 8306, R. S. No pleading of either party raises that issue. The only testimony on that point was that of the minor sister that after the death of her mother, some eleven years before, her father had married again. There was no proof as to whom, whether such second wife was still living, and, if so, whether with her father. The proof was insufficient to establish as a fact the contention made by appellant."

Moreover it was held in that case that the beneficiary (stepmother, wife here) if living could waive her claim. Such waiver could be as well by nonassertion as by express waiver. If the wife was still living, and the circumstances were such that she was entitled to compensation, the time has long passed within which she could file her claim. We hold that the evidence was not sufficient to negative as a matter of law Lucinda's right to compensation. The rule that a status once shown to exist is presumed to continue in the absence of proof of its cessation has no application to the instant situation.

We now consider the remaining assignments of error of appellant Van Dorn.

■ All of these except one relate to rulings permitting Lucinda to contest the dependency claim of Van Dorn, and are predicated upon the proposition that Lucinda was not a beneficiary and therefore had no justiciable interest in the controversy. The particular rulings relate to permitting Lucinda to offer testimony and present argument upon this issue and to open and close the argument thereon. The prejudicial effect of the rulings is asserted to lie in the fact that the issue of Van Dorn's dependency was thus placed before the jury as a controversy solely between Lucinda, an aged and necessitous widow, and Van Dorn; whereas the controversy and only controversy on this issue was between an insurance company and Van Dorn. Manifestly whatever merit might inhere in these assignments is dependent upon the correctness of the contention that Lucinda was not a beneficiary and therefore had no justiciable interest in the case. Since, as we hold, she was a beneficiary, the controversy necessarily was one exclusively between her and Van Dorn; namely, whether Lucinda was entitled to recover all or only one-half of the award. The Insurance Company had no interest in this controversy. Its interest could only arise in event its contention that Lucinda was not a beneficiary were sustained. The only basis of these assignments being thus removed, the asserted error and prejudice are likewise removed.

■ The last Van Dorn assignment complains of Lucinda's counsel's reading to the jury unanswered cross-interrogatories propounded by her to witnesses whose depositions had been taken by Van Dorn relating to the issue of his dependency. When the depositions were offered, Lucinda's motion to quash (timely made) on the ground that her cross-interrogatories were not answered, was sustained. Van Dorn then requested permission to have the depositions completed, as the witnesses lived within 50 miles of Austin. This request was denied, and Van Dorn took his bill of exceptions. The following day counsel for Lucinda withdrew her motion to suppress, "with the understanding that we shall read the cross-interrogatories propounded by us and show that there were no answers." Thereafter Van Dorn introduced the depositions, and Lu-

cinda's counsel read the cross-questions and showed that they had not been answered. The motion to quash was properly granted, and it was at least within the discretion of the court to decide whether the trial should be delayed in order to complete the depositions. But, independently of the correctness of these rulings, the depositions were introduced by him under the stipulation of Lucinda in withdrawing her motion to quash that she be allowed to do exactly what she did do. Her action in so doing can furnish no valid ground of complaint, since the mere fact of introducing the depositions under the stipulation amounted to an agreement or assent to the stipulation. If Van Dorn were not willing to have the stipulation complied with, he should have stood upon his bill of exceptions to the sustaining of the motion to quash and refusal of permission to complete. He could not take advantage of the withdrawal of the motion without accepting the stipulation upon which it was made. He could not avail himself of the benefits of the withdrawal without accepting the onus of the stipulation.

The trial court's judgment is affirmed.

Affirmed.