**ASSOCIATED INDEMNITY CORPORA-
TION et al. v. BILLBERG et al.**

No. 5553.

Court of Civil Appeals of Texas. Amarillo.

May 24, 1943.

158

Underwood, Johnson, Dooley & Wilson, of Amarillo, for appellant Associated Indemnity Corporation.

Elton M. Hyder, of Fort Worth, for appellant Alice Gertrude Billberg.

Thos. J. Pitts, of Odessa, for appellee Mirtie Billberg.

STOKES, Justice.

This suit was instituted in the district court by appellants, Alice Gertrude Billberg and Associated Indemnity Corporation, in the nature of appeals from the ruling of the Industrial Accident Board upon two claims against the appellant Corporation, the insurer, for compensation under the Workmen's Compensation Act, Art. 8306 et seq., R.C.S.1925, Vernon's Ann.Civ.St. art. 8306 et seq., for the death of Clifford Billberg, one filed with the Board by appellant Alice Gertrude Billberg, and the other by the appellee Mirtie Billberg. Mirtie Billberg claimed she was the surviving common-law wife of Clifford Billberg, and Alice Gertrude Billberg was his mother. The record shows that Clifford Billberg lost his life in an automobile accident in Carson County between Borger and Panhandle on the night of December 8, 1941. The Industrial Accident Board held that he was in the line of his employment at the time of his death and awarded the compensation to Mirtie Billberg as the surviving common-law wife of the deceased and denied his mother, Alice Gertrude Billberg, any recovery. Alice Gertrude Billberg and Associated Indemnity Corporation perfected their appeals and by a rearrangement of the pleadings the former appeared in the district court as plaintiff, Mirtie Billberg appeared as cross-plaintiff, and Associated Indemnity Corporation as defendant.

The case was submitted to a jury upon special issues, in answer to which the jury found that Clifford Billberg's death was the result of an accident; that it occurred while he was in the course of his employment with A. J. Hunt Contracting Company; that his average weekly wages at the time were $39.50; and that he and appellee Mirtie Billberg lived together in consummation of a common-law marriage from July 31, 1941, until his death on December 8, 1941. Based upon the findings of the

jury, the court entered judgment in favor of appellee Mirtie Billberg against appellant Associated Indemnity Corporation, who was the insurance carrier of the employer, A. J. Hunt Contracting Company, and denied Alice Gertrude Billberg any recovery. Appellants, Associated Indemnity Corporation and Alice Gertrude Billberg, duly excepted to the judgment and have perfected an appeal to this court, where they attack the judgment of the court below on numerous grounds, the principal contentions of the Indemnity Corporation being: First, that the testimony was not sufficient to establish the death of Clifford Billberg as a compensable claim; secondly, that the court erred in refusing to submit its special charge number two and its special issue number one, which pertained to the question of whether the deceased was in the line of his employment, or was upon a private mission, at the time he met his death; thirdly, that the court erred in overruling its objection to the charge of the court upon the ground that it did not submit the question of the existence of other statutory beneficiaries; and, fourthly, by both of the appellants, that the court erred in submitting to the jury the question of a common-law marriage existing between Mirtie Billberg and the deceased at the time of his death.

No question is raised concerning the employment of Clifford Billberg nor as to the existence of the compensation insurance at the time of his death. He had been employed by A. J. Hunt Contracting Company for some time prior to his death, and A. J. Hunt, the manager and owner of the contracting concern, had denied his request to maintain his residence at Amarillo and required that he reside at Borger or Pampa. He was a resident of Borger in Hutchinson County at the time of his death and had been for some time prior thereto although he maintained a residence for a short time at Pampa. His duties were those of a salesman of a preparation for treating metal oil tanks and other equipment used by oil companies in the production of oil, and his territory included any community in the Panhandle of Texas where oil was produced or producers of oil resided. The hours of his work were not confined to the daytime although, as a rule, he ceased his labors when the day was over and resumed them the next day. On many occasions he worked in the evening hours or at any time when he deemed it necessary for the best interests of his employer. He used his company's automobile and his duties took him from place to place in his territory at irregular intervals and at such times as he deemed expedient. Late in the evening of December 8, 1941, Billberg left Borger in his company's car, intending to go to Amarillo by way of Panhandle, and on the next morning his body and the car were discovered beside the highway about halfway between Borger and Panhandle, the car being in a wrecked condition and showing every evidence of an accident.

The record further reveals that Clifford Billberg and appellee Mirtie Billberg were married, presumably by the conventional ceremony, on September 24, 1931, and lived together until sometime in December 1940. On September 3, 1940, a suit for divorce was instituted in the District Court of Ector County in the name of appellee as plaintiff and judgment granting her a divorce was entered on December 3, 1940. Regardless of the fact that a divorce suit was pending and that a divorce was granted to appellee, the relationship theretofore existing between them as husband and wife was not interrupted, at least in a practical sense. They continued to live together as before until sometime in January 1941, when appellee went to California where she remained until about July 1, 1941. Appellee testified that in the latter part of June 1941, Clifford Billberg telephoned her and requested her to return to him at Borger and continue the relationship of husband and wife as such relationship had theretofore existed, to which she consented. Within a few days thereafter she returned to Amarillo where she was met and received by Clifford Billberg and they continued thereafter to live together, apparently as husband and wife, until his death. The testimony further showed that on June 18, 1941, the deceased married a woman by the name of Dorothy Worley and immediately thereafter he filed a suit against her to annul the marriage on the ground of impotency and the marriage was annulled by judgment of the District Court of Hutchinson County on July 31, 1941, which was about a month after appellee returned from California.

The testimony further showed that Clifford Billberg maintained a bedroom for himself and an office for his company at Borger and that appellee Mirtie Billberg lived there with him as his wife until a

few weeks before his death when she procured employment at Amarillo, after which he maintained a bedroom at Borger· and she lived at a hotel in Amarillo. When it was convenient he spent the evenings and nights with her in Amarillo and he was there with her Sunday afternoon and Sunday night, December 7, 1941. He arose about 4 o'clock on the morning of December 8th and told appellee he was going to Borger where he had some work to do in ·connection with his employment but that ·he had to be back in Amarillo early Tuesday morning, December 9th, to see a man on· business connected with his employment. Appellee testified that she was working at ·the coffee shop of the Amarillo Hotel and that Clifford Billberg remained in the coffee shop most of the afternoon Sunday, December 7th. She said that while there he talked with several persons over the telephone concerning business matters and that he told her he had made an engagement to meet one of them at Amarillo early the following Tuesday morning. The testimony further showed that Clifford Billberg was at Borger all day Monday and that he talked with his foreman there a number of times; that about 7 o'clock in the evening on that day he discussed some of the company's work with the foreman; and that when he and his foreman separated, he told the foreman he had some other work to do at Borger and that he might have to go to Amarillo to see the Shamrock Oil & Gas Company but that he did not know ·for sure at that time whether he would or not. Another witness, whose business was located in the same building as Clifford Billberg's office, testified that late Monday evening Billberg told him he was going to Amarillo to be there early the next morning, that he had an appointment with a certain person there for whom his company was doing some work. He procured some papers from his desk and placed them in the company's brief case, which he usually carried with him, and which was found ·at the scene of the wreck the next morning.

 The first contention is that the testimony was not sufficient to establish the death of Clifford Billberg as a compensable claim, because it was not shown ·that he was in the course of his employ-·ment at the time he met his death on the highway the night of December 8, 1941. Appellant contends in this connection that ·from ·the testimony .it· is ·evident· that his

purpose in making the trip from Borger to Amarillo that night was the purely personal one of affording himself the opportunity to spend· the evening and night with the appellee, Mirtie Billberg. We think the testimony is amply sufficient to support the finding of the jury to the effect that Billberg was in the course of his employment when he met his death. It is true that Mirtie Billberg, the woman with whom he was cohabiting· and who claims she was his common-law wife, then lived in Amarillo; and the testimony is conclusive, we think, that Billberg also intended to spend the night with her, which was a personal privilege and pleasure and did not concern his employment, but it is settled law in this State that where an employee mixes personal matters or missions with those connected with his employment, he does not thereby remove himself from the course of his employment. Maryland Casualty Co. v. Stewart, Tex.Civ.App., 164 S.W.2d 800; Liberty Mut. Ins. Co. v. Boggs, Tex.Civ. App., 66 S.W.2d 787; Galveston H. & S. A. R. Co. v. Currie, 100 Tex. 136, 96 S.W. 1073, 10 L.R.A.,N.S., 367.

Appellant contends, however, that Clifford Billberg had finished his work at Borger on Monday evening, December 8, 1941, and had turned from his employment to pursue his own desire to spend the night ·with appellee Mirtie Billberg in Amarillo and that he did not intend to resume the duties of his employment until Tuesday morning. It contends that the case is governed, therefore, by the rule announced in the case of Southern Casualty Co. v. Ehlers, Tex.Civ.App., 14 S.W.2d 111. We cannot agree with appellant in this contention. In the Ehlers case the employee finished the work connected with his employment about 11 o'clock at night at a dance. He conferred with two prospective customers and when he· concluded his conference with the last one, instead of going home immediately, he remained at the dance for another hour and then started home, intending to spend the night there before resuming his duties for his employer the next morning. On the way home he ·was injured, and the court held that he was not in the course of his employment because he had departed from it, remained at the dance for another hour, and was returning home for a night's rest, both of which pertained to his personal pleasure and welfare. Neither· the hour spent at the dance nor his intended rest at home had any-

thing whatever to do with the duties of his employment. No such condition is revealed by the testimony in the instant case. It showed with fully as much force that at the time of his death Billberg was on his way to Amarillo for the purpose of fulfilling an engagement with one of his customers, as it did that he intended to spend the night with the appellee. The facts revealed by the opinion of the court in Maryland Casualty Company v. Stewart, supra, are very similar to those revealed by the record in this case, and the court there held that, notwithstanding the employee's trip was, in part, to accompany her son in connection with a private business mission of his own, she also intended to perform some of the duties connected with her employment and that she was therefore in the line of her employment at the time she was injured. We find no merit in this contention of appellant and its assignments of error in respect thereto will be overruled.

■■ The second contention presented by appellant is that the court erred in refusing to submit to the jury its special charge number two and its special issue number one. The special charge would have instructed the jury that if Billberg had completed his work for the day and would not have resumed it until the next day, and he was driving to Amarillo to spend the evening hours with the appellee, he would not be in the course of his employment as that term was defined in the charge. The special issue requested, and refused by the court, would have asked the jury if they found that Billberg, having completed the work of the day, had turned aside from that work to be with the appellee Mirtie Billberg for the evening hours.

The requested charge and issue, if submitted, would have ignored the principle of law that an employee may mingle a private purpose with that of attending to the duties of his employment and still not destroy the compensable nature of his engagement at the time of his injury. Liberty Mut. Ins. Co. v. Boggs, Tex.Civ.App., 66 S.W.2d 787. Appellant requested, and the court submitted to the jury, its special issue number three in which the jury was required to find whether or not Billberg's presence upon the highway when he met his death was attributable solely to his desire to see and be with the appellee Mirtie Billberg. This special issue was answered in the

negative and, in our opinion, it submitted the correct proposition of law in respect to this contention.

■ Appellant also requested the submission of a special issue which would have required the jury to find whether or not any intention of the deceased to see any one in Amarillo in connection with his employment was merely an incident of his journey to see and be with the appellee Mirtie Billberg, and in no real sense was the cause of, or explanatory of, the particular trip he was making at the time he met his death. The court refused to submit the special issue and we find no merit in the contention of appellant that error was thereby committed. The special issue would have required the jury to dissect the purposes of the employee and, in effect, decide the proportion of his intention that was applicable to his business mission and the proportion that was applicable to his personal wishes and pleasure. The cases cited above clearly hold that an employee may mix with his business mission a personal intention or purpose and still remain within the course of his employment. That question was correctly submitted by the court and these contentions of the appellant will be overruled.

■ The third contention of appellant is that the court erred in overruling its objection to the court's charge upon the ground that it did not submit issues upon the question of the existence of other statutory beneficiaries. Appellant contends under these assignments of error that it was the duty of the appellee to allege and prove that there were no children of the deceased who were entitled to participate with her in the compensation for which she sought recovery and that it was the duty of the court to require the jury to pass upon that question. There was no testimony to the effect that Clifford Billberg did not have children who survived him, either by the appellee or by any other marriage, and, in our opinion, this contention of appellant is fundamental and must be sustained. Texas Employers' Ins. Ass'n v. Mints, Tex.Civ.App., 10 S.W.2d 220; United Employers Casualty Co. v. Duncan, Tex.Civ.App., 151 S.W.2d 354.

If the deceased left minor children, conceding that the appellee was his wife, then she would have been entitled to one half of the recovery, if any, and the surviving children would have been entitled to the

other half. Article 2578, R.C.S.1925; Southern Surety Co. v. Weaver, Tex.Com. App., 273 S.W. 838; Texas Employers' Ins. Ass'n v. Boudreaux, Tex.Com.App., 231 S.W. 756; Vaughan v. Southwestern Surety Ins. Co., 109 Tex. 298, 206 S.W. 920; United Employers Casualty Co. v. Duncan, Tex.Civ.App., 151 S.W.2d 354.

It is now well settled in this State that appellee's right to recover compensation rests not only upon necessary allegations and proof that she was the surviving wife of the deceased employee, but that there were no others in an equal or higher classification who were entitled to participate in the compensation for which she sued, and the burden rested upon her both to allege and prove those facts before she would be entitled to recover. Texas Employers' Ins. Ass'n v. Mints, Tex.Civ.App., 10 S.W.2d 220; Casualty Reciprocal Exchange v. Alessandro, Tex.Civ.App., 34 S. W.2d 636; United Employers Casualty Co. v. Duncan, supra.

Appellee's answer to this contention is that if the deceased left minor children and they were entitled to participate in the recovery under ordinary circumstances, they would not be entitled to recover in this case because the time had long past within which they could file their claim under Article 8307, Section 4 of the Act; and if there were surviving children, they must be held to have waived any right they had to compensation because of their failure to file notice and claim as provided by the statute. She says that any claim surviving children may have had is barred and that, therefore, no injury could be suffered by appellant.

The article and section last referred to provides that notice of an injury must be given within thirty days and a claim therefor must be filed within six months after the injury. Provision is made for relaxation of the requirement, however, where good cause is shown for failure strictly to comply with it. Our courts hold that a claim for compensation under the Act may be waived and that in the case of an adult the failure to give notice and file the claim within the time specified by the statute constitutes a waiver of the claim. American Gen. Ins. Co. v. Richardson, Tex.Civ.App., 132 S.W.2d 161; Texas Employers' Ins. Ass'n v. Sloan, Tex.Civ.App., 36 S.W.2d 319. In both of those cases the supposed absent claimants were adults and no question was raised concerning absent minor claimants. In this case the question concerning absent claimants pertains to minors and the question arises, therefore, whether the rule announced in the cited cases applies to minors as well as to adults. Singularly, both the appellant and the appellee rely upon the case of Latcholia v. Texas Employers' Ins. Ass'n, Tex.Com.App., 167 S.W.2d 164, 168, and both contend with much earnestness that it supports their divergent contentions. That was a case where the employee, who was a minor, was totally and permanently disabled. His injury resulted from a fall while riding a bicycle. He did not inform any one of the injury and his mother concluded he had rheumatism and so reported to his employer the next day. It was several months after he received the injury before he told his mother about his fall from the bicycle and she immediately notified his employer who, in turn, notified the insurance carrier. The latter made an investigation of the incident but nothing seemed to come of it. The employee was seventeen years of age, and his father, acting as his next friend, finally filed a claim with the Industrial Accident Board more than eight months after the injury. The contention was made by the insurance company that minors are not excepted from the statute which provides that notice shall be given within thirty days and a claim filed within six months after the injury, but that they are required to file the notice and claim in the same manner as adult claimants. In discussing this contention, Judge Hickman, speaking for the Supreme Court, observed that Section 4a of Article 8307, R.C.S.1925, does not make an exception of minors in its requirement that notice and claim be so filed, but that Section 13 of Article 8306 recognizes that minors are not in the same category as adults, because that Article provides, "If an injured employe is mentally incompetent or is a minor or is under any other disqualifying cause * * *," his guardian or next friend may act in his behalf. The holding is to the effect that section 13 unmistakably declares that a minor is under a disqualification. From the disqualification of minority the statute makes one exception and only one. It is that in case of partial or temporary total incapacity, it is not necessary that the minor be represented by a guardian or next friend. The Industrial Accident Board is given authority to protect his interests in that kind of a claim. When any other right or privilege

accrues to a minor under the Act, it is necessary that he have a guardian or next friend to act for him. He can not, by reason of his minority, act for himself.

█ In its opinion in the Latcholia case, the Supreme Court said: "From a consideration of these two articles [Sections 4a and 13, supra] it appears that, while the Legislature recognized that a minor rests under disqualifications under this act, he is not, merely because of his minority, to be regarded as being physically or mentally incapacitated. We, therefore, do not construe Article 8307, Section 4a, supra, as providing that as a matter of law a minor shall have six months after his disqualification is removed within which to file his claim for compensation. Absent a direct provision to that effect, we think it should be ruled, and we do rule that the time begins to run from the date of the injury, but that the fact of disqualification will be held to constitute good cause for not filing the claim during that period."

We do not agree with the appellee that this expression of the court amounts to a holding that a minor must file his claim with the Industrial Accident Board within the six months required by the statute and that minority is no excuse or good cause for not filing it within that time. There being no provision in the statute granting a minor six months after his disqualification as a minor has been removed by the appointment of a guardian or the appearance of a next friend, the court held that the time begins to run from the date of the injury. "But," said the court, "the fact of disqualification will be held to constitute good cause for not filing the claim during that period." The period referred to was the six months in which the statute provides the claim must be filed, in the absence of good cause for delay, and the effect of the holding is that when the guardian is appointed or the next friend appears, neither he nor the minor has six months thereafter in which to act, but he must act immediately. In that case the next friend did act immediately and although eight months had elapsed after the injury before he did so, the court held the claim was filed in time or, in other words, that the disability of minority constituted good cause for not filing the claim prior to the time the next friend appeared and acted for him.

It is true that in the Latcholia case the Supreme Court was passing upon a claim filed in behalf of the employee for an injury that was personal to him, and not upon the claim of a minor for the death of a parent, as in this case. It is also true that the court confined its holding in that case to one of total and permanent incapacity; but, under its interpretation of the statute, it is clear that the claim of a minor for compensation accruing to him by virtue of the death of a parent-employee comes under the same classification because of the court's holding that the only exception from the disabilities of minority provided by the Act is that in case of partial or temporary total incapacity, it is not necessary that the minor be represented by a guardian or next friend. The claim of minors, if any, involved in the instant case, of course, could not be based upon their own total and permanent incapacity as the result of an injury to them, as was the claim of the minor in the Latcholia case, but neither would they come in the classification of those excepted from the disabilities of minority by the statute. There being only one exception to the disabilities of minority provided by the statute, the minors, if any, involved in this case necessarily fall within the same classification as the minor in the Latcholia case.

█ The fourth and last contention presented by appellant Associated Indemnity Corporation, which is also urged by appellant Alice Gertrude Billberg, pertains to the manner in which the court submitted to the jury the question of a common-law marriage between the appellee Mirtie Billberg and Clifford Billberg, deceased. The fourth special issue submitted by the court asked the jury if they found that Mirtie Billberg and Clifford Billberg lived together in consummation of a common-law marriage after July 31, 1941, up to the time of Clifford Billberg's death. The jury answered this question in the affirmative, and appellants contend under this assignment of error that the special issue was duplicitous and was upon the weight of the evidence. We think this contention of appellants must be sustained for the reason that in submitting the special issue the court assumed the element of an agreement to consummate the marriage. Our courts hold that the agreement is fundamental and that cohabitation is only an element of a common-law marriage. Wris-

164

ten v. Wristen, Tex.Civ.App., 119 S.W.2d 1104; McChesney v. Johnson, Tex.Civ. App., 79 S.W.2d 658. Appellee asserts that the element of agreement was established by uncontradicted testimony, and in this they seem to be correct in so far as direct testimony is concerned but the nature and source of the testimony were such that, in our opinion, the court was not warranted in assuming that it was true. Casualty Reciprocal Exchange v. Parker, Tex.Com. App., 12 S.W.2d 536; Roe v. Davis, Tex. Civ.App., 142 S.W. 950. The question should have been submitted to the jury. We do not hold, of course, that the agreement must be expressed or evidenced by any form of words. Consolidated Underwriters v. Kelly, Tex.Com.App., 15 S.W.2d 229. The law on this question is well expressed by the courts in the cases above cited.

As is evident from what we have said, in our opinion, the court erred in the particulars indicated and the judgment will therefore be reversed, and the cause remanded.