In re ADOPTION OF Teina Kay
PETERSEN, a Minor.

Marvin PETERSEN and Pauline Petersen,
Appellants (Objectors below),

v.

Raymond B. BYRD, Appellee
(Petitioner below).

No. 3933.

Supreme Court of Wyoming.

July 2, 1971.

Elmer J. Scott, of Scott & Joffe, Worland, for appellants.

Floyd D. Gorrell, Worland, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN and GRAY, JJ.

Chief Justice McINTYRE delivered the opinion of the court.

This matter involves a proceeding for the adoption of Teina Kay Petersen, a minor. The girl's paternal grandparents, Mr. and Mrs. Petersen, of Sturgis, South Dakota, objected to the court's jurisdiction. An order for the adoption was nevertheless entered and the Petersens have appealed.

Teina's natural father died in an accident. Her mother remarried Raymond Byrd when Teina was seven years old. About a year and eight months later the mother died. Within a month thereafter Byrd petitioned to adopt Teina.

The order of events in connection with the adoption seems to have some significance. We will therefore relate them. They are not in dispute.

Byrd's petition for adoption was filed August 4, 1970. The court thereupon entered an order fixing August 14 as the date for hearing the petition and the examination of the parties in interest. No notice of the adoption proceedings was served upon appellants, but they admit they learned of them and had knowledge they were pending.

On August 11 the Petersens came to Worland to visit their granddaughter, hoping to take her home with them, supposedly for a visit. The petitioner refused permission for them to take the child. Counsel for appellants claims that thereupon the appellants took the child without permission. Counsel for appellee uses somewhat different language and claims the grandparents "stole" the child.

The next day, August 12, an attorney for the Petersens filed objections to the adoption by Byrd. The objections were that no medical report accompanied the petition; and notice of the petition had not been served on near relatives. With the filing of these objections, the court continued the hearing on Byrd's petition for adoption to August 21.

Then, on August 14, Byrd petitioned to be appointed guardian of the person and estate of Teina. The maternal grandmother of the child joined in this petition. On the same day an order was entered for such appointment.

Thereafter, on August 17, appellants obtained an order in South Dakota for their appointment as guardians of the person and estate of Teina; and on the next day, August 18, their attorney in Worland filed new objections to the adoption petition. These objections added to those formerly filed that the child was not within the jurisdiction of the court and is "now" a resident of South Dakota; and that no jurisdiction of the objectors has been obtained.

Finally, hearing was had on Byrd's petition for adoption on August 21, 1970. The court found it had jurisdiction and entered an order for the adoption.

Appellants have specified four points to be considered in connection with their claims of error. We will confine ourselves to a discussion of these points.

## Medical Report

Section 1–708, W.S.1957, 1969 Cum. Supp., provides that every petition for adoption shall be accompanied by certain things, including a medical report on the child. Appellants claim Byrd's petition was fatally defective because such a report was not furnished.

Byrd's attorney counters by saying in the first place the reason for the report is not present in this particular case where the child had lived in the petitioner's home, as a stepchild, for nearly two years. He argues further that the medical report is not jurisdictional and its omission was not fatal.

Without deciding how meritorious these arguments are, we prefer to look at and consider the exception contained in § 1–708. It is expressly stated in the section that the medical report shall not be required in an adoption proceeding where one or both of the adopting parents is related to the child by either blood or marriage. Without question Byrd was related by marriage until his wife (the girl's mother) died. Our question is whether for purposes of the exception in § 1–708 Byrd should be considered related by marriage at the time his petition for adoption was filed.

The trial court found Byrd related by marriage "under the evidence in this case." As far as this particular case is concerned, where the same family ties continued after the mother's death as had existed prior thereto, we will not say it was wrong for the trial court to consider Byrd as a stepfather and related by marriage to Teina. Therefore, the exception in § 1–708 would apply and a medical report was not necessary.

We will not pretend to answer the question of relationship by marriage for all

cases and all situations. Instead, we confine ourselves to the facts in this particular case, and particularly to the fact that the parties continued the relationship and the same family ties after the wife and mother died. In Steele v. Suwalski, 7 Cir., 75 F.2d 885, 888, it was held:

"Where the relationship by affinity is in fact, as it was in this case, continued beyond the death of one of the parties to the marriage which created the relationship, and where the parties continue to maintain the same family ties and relationships, considering themselves morally bound to care for each other, the District Court properly found that the relationship continued to exist and that appellee, in this case, was the sister-in-law of the deceased veteran within the meaning of 38 USCA § 511."

Attorneys on both sides of the case seem to agree the question of whether relationship by marriage is lost upon absolution of the marriage has usually arisen in insurance cases, incest cases, inheritance tax cases, and other cases not similar to the one we are dealing with. With respect to the general proposition, where the decision is not based on the facts similar to those in the case we are concerned with, the matter was gone into at great length in In re Bordeaux' Estate, 37 Wash. 561, 225 P.2d 433, 434–444 and 451, 26 A.L.R.2d 249.

The Washington supreme court in the *Bordeaux* case stated, not unanimously, but in "an overwhelming preponderance of cases," the courts have held the step-relative or in-law is to be considered as remaining in this capacity even after the death of the individual whose marriage brought the relationship into existence. The court then discussed particular cases which had followed the minority view. We find appellants relying primarily on the cases considered to be the minority view in *Bordeaux*.[1]

### Notice

■ The second assignment of appellants is that no notice was served upon any of the near relatives of the minor, nor upon the guardians in South Dakota.

No statute is called to our attention which requires the serving of notice on grandparents living in another state. Indeed, counsel on both sides seem to agree there is no such statutory requirement. We have already mentioned that the maternal grandmother, who lives in Wyoming, joined in Byrd's application for guardianship in Wyoming. This grandmother also testified at the adoption hearing and approved the adoption by Byrd. After Byrd was appointed guardian, he gave the guardian's consent to the adoption. No authority has been shown for appellants' assertion that they should have been notified as guardians in South Dakota. They were not guardians when adoption proceedings were initiated.

### Request for Continuance

■ Appellants' third assignment is that the court abused its discretion in denying a request for a continuance after overruling objections to its jurisdiction.

It would seem appellants' attorney fails to realize the hearing before the court was on Byrd's petition for adoption. The court had ordered a hearing on August 14, 1970, of the petition for adoption and the examination of the parties in interest thereunder. That is the hearing postponed to August 21, 1970, and actually held at that time.

Interested parties were entitled to make known their objections, if any. The mere fact that appellants saw fit to object to jurisdictional matters only does not mean they could not have objected to the adoption also if they cared to. One postponement had already been granted; the appel-

1. Other cases which have followed the view followed in In Re Bordeaux' Estate, supra, include: Depositors Trust Company of Augusta v. Johnson, Me., 222 A. 2d 49, 52; In re Ehler's Estate, 53 Wash.2d, 679, 335 P.2d 823, 824–825;

Petition of United States Coast Guard Vessel CG–95321, 1 Cir., 418 F.2d 264, 271; American Gen. Ins. Co. v. Richardson, Tex.Civ.App., 132 S.W.2d 161, 163–164; and Benefield v. United States, D. C., 58 F.Supp. 904, 905–906.

lants knew about it; they had an attorney there; and they could have been there themselves if they had grounds for objecting to the .adoption. We cannot say the judge would have been arbitrary in refusing a further continuance if request had been properly made.

As we view the record, cause for continuance was not made 'clear. After testimony at the hearing was concluded, the judge asked if the attorneys wished to argue the matter at that time. Petitioner's attorney indicated he had already argued (before evidence was adduced). The response of Petersens' attorney was:

> "Only this, that I would like to have the Record show that if the Court should overrule my objections to the jurisdiction, before an Order of Adoption is entered I would like a few days at least to get in touch with the paternal grandparents to see whether they would like to come and give testimony opposing the adoption."

On its face, counsel's suggestion about a continuance appears that its purpose was to "have the Record show." The judge did not bother to comment or rule on the suggestion, and counsel did not pursue the matter. There was no showing that Petersens actually did want to come and give testimony opposing the adoption. There was further no showing of why they did not do so at the time set for such.

Even at this time, and on appeal, there still is no showing by affidavit or otherwise that appellants wanted to be heard or would have come to Wyoming to give testimony if a continuance had been granted. Under the circumstances we cannot say there was an abuse of discretion in not continuing the case a second time, especial-

ly after hearing had been had and the evidence concluded.

### Absence of Child

Appellants' fourth assignment of error is that the adoption is invalid because the child was not present at the hearing and her presence was not waived by the court.

The contention under this assignment is that § 1–711.2(b), W.S.1957, 1969 Cum. Supp., states that at the hearing the petitioner and child shall appear "unless their presence is waived by the court."

Inasmuch as the court granted the adoption, we can assume it waived the presence of the child who was still in South Dakota. Not only does counsel for appellants agree this requirement is not jurisdictional, but he fails to support his fourth assignment by any authority or logic.

It may be of interest to note that § 1–707.2, W.S.1957, 1969 Cum.Supp., provides any child present within this state "at the time the petition is filed," irrespective of the place of birth or place of residence, may be adopted.

### Summary:

We have considered all of the assignments of error presented to us on appeal, and we fail to find where the court was without jurisdiction or where it abused its discretion. We do not pretend to say a stepfather has preferential rights. That matter is not here involved. As a matter of fact, the trial court expressed the view that all persons involved were fit and proper people and there was no doubt the grandparents had the interest of the youngster at heart. In its judgment, the court found the adoption was in the best interest of the minor.

Affirmed.