## COLUMBIA CASUALTY CO. v. KEE.
### (No. 12064.)

Court of Civil Appeals of Texas. Fort Worth.
Oct. 6, 1928.

Rehearing Denied Nov. 17, 1928.

Luther Hoffman, of Wichita Falls, for appellant.

Grindstaff, Zellers & Hutcheson, of Weatherford, for appellee.

BUCK, J. The Columbia Casualty Company filed a suit in the .district court of Wichita county to set aside the award of the Industrial Accident Board in favor of J. T. Kee, in the sum of $17.31 for 401 weeks. The casualty company, appellant here, alleged that Kee, hereinafter called appellee, was not injured in the course of his employment with the Wichita-Electra Drilling Company, for ,which Kee claimed he was working, and prayed for judgment.

' A trial was had before a jury, and the following special issues were submitted, and answered as indicated:

"(1) Did the defendant, J. T. Kee, sustain personal injury on the 11th day of December, 1926? Answer: Yes.

"(2) If you answer the foregoing issue 'yes', then answer the following: Were the injuries sustained by said defendant in the course of his employment for the Wichita-Electra Drilling Company? Answer: Yes.

"(3) Was J. T. Kee totally incapacitated for work on the 11th day of December, 1926, as a direct result of his said injuries so sustained on said date, if any were so sustained on said date? Answer: Yes.

"(4) Was such total incapacity, if any, permanent? Answer: No.

"(5) Is this a special case in which manifest hardship and injustice will result to J. T. Kee if his compensation is not paid in a lump sum? Answer: Yes.

"(6) Fix the number of weeks, if any, of his total incapacity to work, if any. Answer: 200 weeks.

"(7) Will J. T. Kee sustain a partial incapacity for work in the future? Answer: Yes.

"(8) If you have answered special issue No. 7 'No' then you need not answer this issue, but if you have answered the same 'Yes,' then answer:

"(A) Fix the number of weeks, if any, of such partial incapacity for work. Answer: 201 weeks.

"(B) Fix the percentage of his partial incapacity for work, if any. Answer: 60%.

"(9) If you have found that J. T. Kee is suffering from any incapacity for work, then answer:

"Does such incapacity for work, if any, result directly and proximately from the injuries, if any, sustained by the said J. T. Kee on the 11th day of December, 1926, and the diseases and infections resulting naturally therefrom, if any? Answer: Yes.

·"(10) Does such incapacity for work, if any, result from infection or disease not caused by or resulting from the accident sustained by J. T. Kee, if any, on the 11th day of December, 1926? Answer: No."

At the request of appellant company, the court gave the following special charge and submitted the special issue, defining partial incapacity and permanent partial incapacity:

"Partial incapacity is defined as meaning that one who has been injured is only able to perform a part of his regular labor or that he is only able to perform labor of a less remunerative class; that is to say his earning capacity has been reduced; and that such incapacity has continued or will continue for the time being but not permanently.

"Permanent partial incapacity means that the injury is of a permanent nature and duration whereby the employee is only able to perform a part of his usual duties or is only able to perform labor of a less remunerative class by which his earning capacity is reduced."

Special issue requested by appellant:

. "If you have found that J. T. Kee has sustained incapacity for work now answer the following question:

"Does such incapacity result from infected tonsils and teeth? Answer: No."

Upon the answers of the jury as given, the court rendered judgment in favor of appellee for compensation at the rate of $17.31 a week for a period of 200 weeks, by reason of appellee's total incapacity for work, as the result of the injury, and rendered judgment for 201 weeks at the rate of $10.39, for the partial incapacity suffered. From this judgment the casualty company has appealed.

### Opinion.

Appellant assigns error to the failure of the trial court to give a peremptory instruction in its behalf, and claims that the uncontradicted evidence shows that the appellee was not injured in the course of his employment, but was injured while going to his work in his own automobile, and that the Wichita-Electra Drilling Company had, a short time before the accident, made a rule that the employees should provide their own means of transportation from Electra to the place where the well was being drilled, some five miles from Electra. The evidence shows that appellee had been employed at various times by the drilling company, and had returned to work a short time before the accident; that L. B. Stephenson, the foreman of the company which was drilling the well, was accustomed to carry the employees out to the well in the morning and bring them back at night in the company's car. This had been done on the various occasions when appellee worked for the company prior to the last time. It appears that there had been a change in the plans of the company to be responsible for the laborers' getting out to the well and being brought back, and that the company had agreed to pay the laborers 50 cents a day more than theretofore; that a charge of 50 cents a day had been made against the employees for transportation to and from the well, and the company had changed this rule and paid the men 50 cents a day more than they were paying theretofore and required them to go to and from the well in their own means of transportation. As a matter of fact, they had been going and coming in the

company's car, and no charge had been made therefor. Appellee had not been told on coming back to work that any change had been made as to the price paid as a daily wage, or any change as to the company's providing transportation. In fact, appellee testified that his daily wage was 50 cents less at the time of the accident than it had been theretofore, which was not contradicted. On the day in question, the foreman met the employees at a filling station, as usual, and told them that his wife was sick and he could not go out, and that he needed the company car. He told Mr. Kee to go and get his own car and take the men out. The well was, as stated, some five miles distant from Electra, and while going to work the accident occurred, without any claimed responsibility on the part of Kee therefor. The car was struck by a car behind going in the same direction and thrown into the ditch, and the injuries complained of were received.

Appellant contends that since the uncontradicted evidence shows that the alleged accident occurred two miles from the scene of employment, while appellee was proceeding over a public highway, exposed only to such dangers as the general public was exposed to, and in his own vehicle, furnished by himself, the jury should have been instructed to return a verdict in favor of appellant.

Liability for compensable injury while the employee is going to and from his work has been the subject of much discussion in compensation cases. The Workmen's Compensation Law (Rev. St. 1925, art. 8309, § 1, subd. 5), under the heading "Definitions and General Provisions," provides:

"The terms 'injury' or 'personal injury' shall be construed to mean damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom."

In the same article, paragraph 4 of subdivision 5, of section 1, under a heading of "Injuries for Which No Compensation is Allowed," provides:

"An injury caused by the employee's willful intention and attempt to injure himself, or to unlawfully injure some other person, but shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employé while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere."

In Boyd's Workmen's Compensation, published 1913, it is said:

"'The person entitled to compensation under the act,' says Buckley, L. J., 'is a workman who in an employment suffers personal injury by "accident arising out of and in the course of the employment." The words "out of" and "in the course of employment" are used conjunctively, not disjunctively; and upon ordinary principles of construction are not to be read as meaning "out of," that is to say, "in the course of." The former words must mean something different from the latter words. The workman must satisfy both the one and the other. The words "out of" point, I think, to the origin or cause of the accident; the words "in the course of" to the time, place, and circumstances under which the accident takes place. The former words are descriptive of the character or quality of the accident. The latter words relate to the circumstances under which an accident of that character or quality takes place. The character or quality of the accident as conveyed by the words "out of" involves, I think, the idea that the accident is in some sense due to the employment. It must be an accident resulting from a risk reasonably incident to the employment.'".

■■ In Lumberman's Reciprocal Ass'n v. Josie Behnken, 112 Tex. 103, 246 S. W. 72, 28 A. L. R. 1402, the Supreme Court held that an injury sustained in the course of employment within the meaning of the Workmen's Compensation Law was not necessarily, though usually, one sustained on the premises of the employer or during the hours of active labor. It is sufficient that it results from a risk necessarily, ordinarily, or reasonably inherent in or incident to the conduct of such work. Though injuries received in going to or returning from work, not on the employer's premises, or from causes controlled by him, such as being run over by trains or vehicles, are not ordinarily risks incident to the employment; they become so when occurring at a place furnished by the employer, in the interest of his business, as the necessary and immediate means of access to the place of labor, from a danger caused by the permanent condition of such place, and at a time when the employee is expected or required to enter the plant. It was held, where a plant of a lumber company, situated on a railway and comprising the entire town there, embracing dwellings rented to its white employees, including deceased, situated on the side of the track opposite the shops where he worked, access thereto being by a single crossing over the tracks, and the employee, returning from dinner at his home to resume work, was struck and killed by a railway train at this crossing, that his injury was sustained in furtherance of the business of his employer; that the crossing should be treated as a part of the employer's premises.

In Employers' Liability Assurance Corporation v. Light, 275 S. W. 685, writ of error refused, Justice Baugh, of the Austin Court of Civil Appeals, said:

"The Dealers' Granite Corporation furnished no transportation for its employees to or from the quarry. Their time began at the quarry and stopped when they quit work. They worked by the day, and the deceased was being paid $4 per day of 9 hours at the

time of his death. Under these facts and circumstances it is the contention of the appellant that Light ceased to be an employee of the Dealers' Granite Corporation when he left the quarry, was not in the course of his employment at the time of his death, but was subject to risks incident to the public in general in traveling this road, and not therefore entitled to compensation.

"We do not agree with this contention. Nor shall we enter into any extended discussion of the issue here presented. Both appellant and appellee have cited us to numerous cases from other states in support of their respective contentions, but, as stated in the case of American Indemnity Co. v. Dinkins (Tex. Civ. App.) 211 S. W. 952, which is the Texas case chiefly relied upon by appellant, the decisions of other states are not of great service in construing the Texas act as to what is meant by the phrase 'injury sustained in the course of employment.' When the Legislature undertook to define this language by express provisions of the act itself, it of necessity rejected the definitions and judicial constructions placed thereon by the courts of other states. After setting out injuries not included (none of which have any application to this case), the act provides that such injury 'shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere.' Section 1 of part 4, c. 103, Gen. Laws 1917; 1918 Supp. to V. S. R. S. art. 5246—82.'"

See Thetford v. London Guarantee & Accident Co., 286 S. W. 1113, by Justice Jackson of the Amarillo Court of Civil Appeals, and the same case by the Commission of Appeals, Section A, 292 S. W. 857. In that case the Court of Civil Appeals held that there was an issue of fact as to whether the employer expressly agreed to convey the deceased to and from his work in one of the company's cars, and, if there were no express agreement, that it had impliedly contracted to convey the deceased to and from his work, and whether or not as a part of such agreement it was the duty of the deceased to assist in loading into the company's vehicles the tools and supplies to be hauled to the lease, was a question of fact for the jury. The Court of Civil Appeals reversed the judgment of the lower court. The Commission of Appeals, opinion approved by the Supreme Court, held that the evidence did not raise the issue of fact as to the injuries causing the death of the employee having been sustained by him in the course of his employment, within the meaning of the provisions of the statute.

■ But in the instant case we think that the uncontroverted evidence shows that the injuries were received in the course of appellee's employment. Irrespective of whether the drilling company had undertaken to convey the employees to and from the well as part of their compensation, on this occasion the appellee was acting under the direct orders of the foreman, in getting his own car and taking the other employees out to the well. In so taking the other employees, we think that appellee was performing an act under the direction of the foreman, and for the company's benefit.

■ Did the trial court err in submitting special issue No. 3 in the form it was submitted? Appellant urges that it involves the answering of two questions, and is duplicitous and so confusing as to prevent the jury's intelligently answering the same. Appellant defended the case on the ground (1) that the appellee sustained no injury at all; (2) that, if he sustained an injury, it was not in the course of his employment; (3) that, if he suffered any disability, it was the result of infected tonsils and teeth, and not of any alleged injury. Dr. Ogden testified that appellee's condition was due to his tonsils. Other physicians testified that they found nothing the matter with appellee except his tonsils were in an extremely bad condition, that both tonsils contained pus. It is claimed by appellant that the issue as presented consisted of two questions: (1) Was J. T. Kee totally incapacitated for work? (2) Was such total incapacity the direct result of his injury so sustained, if any? Appellant cites article 2189, Rev. Civ. Statutes of 1925, which provides, among other things, that: "Such special issues shall be submitted distinctly and separately." See Panhandle & S. F. Ry. Co. v. Parrish (Tex. Civ. App.) 281 S. W. 887; Lancaster & Wallace v. Rogers (Tex. Civ. App.) 258 S. W. 283. But, inasmuch as the jury answered special issue No. 1 that the defendant, appellee here, sustained personal injuries on the 11th day of December, 1926, and, in answer to special issue No. 2, that the injuries were sustained in the course of appellee's employment by the drilling company, and inasmuch as in answer to special issue requested by appellant that such incapacity as the jury had found was sustained by appellee was not from infected tonsils and teeth, we think any error in the submission of the issue as presented becomes harmless. The jury could not reasonably have been misled or confused by the form of issue No. 3 as presented.

■ Objection is made to issue No. 7, to wit, "Will J. T. Kee sustain a partial incapacity for work in the future?" Objection was made to the issue because it was on the weight of the evidence, and assumes, and the jury was in effect told, that the defendant had already suffered partial incapacity. In answer to special issue No. 3, the jury found that Kee had been totally incapacitated for work as the direct result of the injuries sus-

tained on said date; and, in answer to special issue No. 4, the jury found that such total incapacity was not permanent. In answer to special issue No. 6, the jury found that appellee's total incapacity to work was for 200 weeks. We do not think that issue No. 7 as presented is subject to the objections urged by appellant, and overrule the assignment.

We think that the definition given by the court of total incapacity is not subject to the objections made by appellant, and correctly defined the term. See Home Life & Accident Co. v. Corsey (Tex. Civ. App.) 216 S. W. 464; Lumbermen's Reciprocal Ass'n v. Wells (Tex. Civ. App.) 283 S. W. 208; Georgia Casualty Co. v. Ginn (Tex. Civ. App.) 272 S. W. 601.

Other assignments are presented in appellant's brief, and we have carefully examined the same, and overrule such assignments.

Judgment affirmed.