## INSURORS INDEMNITY & INS. CO. v. LANKFORD.

### No. 4063.

Court of Civil Appeals of Texas. El Paso.
April 10, 1941.

Brooks & Little, of Big Spring, Todd, Crowley & Thompson, of Fort Worth, for appellant.

R. B. Rawlins, of Monahans, John J. Watts, of Crane, and J. C. Ross, of Monahans, for appellee.

SUTTON, Justice.

This is an appeal from a judgment of the District Court of Ward County rendered on a verdict of the jury trying the same.

The case arises under the Workmen's Compensation Law. Vernon's Ann.Civ.St. art. 8306 et seq. U. R. Lankford filed his claim with the Industrial Accident Board against the Insurors Indemnity & Insurance Company for personal injuries sustained by him as the result of an automobile collision. The finding and award of the Board were adverse to him and he appealed to the District Court of Ward County. The case was there tried and on the verdict of the jury in his favor the court rendered judgment for him, and from that judgment the Insurance Company has perfected this appeal.

The parties will be designated as in the trial court.

The defendant Insurance Company has twenty-one assignments of error and nine propositions. Under our view of the case it will be necessary to consider one proposition only, which we regard as decisive of the case, to-wit: Did the plaintiff sustain his injuries in the course of his employment?

Concerning the main facts there is little or no dispute. On November, 21 1938, the plaintiff was injured as a result of a collision between the car in which he was riding and another motor vehicle on Highway U. S. 80 about three miles east of Monahans, the county seat of Ward County. He was on and prior to such date employed by Loffland Brothers Company as an oil well driller. As such he was covered and protected by a policy of industrial accident insurance carried by the defendant Company. That he received injuries is not denied.

The plaintiff and his fellow workmen resided in the town of Monahans. They worked on a well known as the Clyde Cowden No. 48, located approximately fifty miles from Monahans. To reach the well from Monahans the crew traveled Highway 80 for approximately one-half the distance east to where they left the highway, and from that point on used county and ranch roads. The return trip was by the same route. The shift to which plaintiff belonged worked from twelve o'clock midnight to six o'clock in the morning. These workmen had used a private car in going to and from their work for some time prior to the accident. Some five or six days prior to November 21, 1938, the date of the accident, the crew had agreed with one of its members, Jess Marrs, to use a new Ford he wanted to buy and did buy. Each workman paid Marrs seventy-five cents for each round trip. They met at a cafe in Monahans at about ten o'clock to 10:15 each night and from there went to the well. During the early morning of November 21, 1938, a generator burned out. Plaintiff testified that just before 6 A.M., when the shift quit and turned over to another, the "tool pusher," Ben Barlow, arrived for an inspection. Plaintiff told him about the generator trouble, whereupon he said Barlow told him when he got to Monahans to tell Wilson at the W. & W. Electric Shop to come out and get the generator and to do something about it to keep it working. Barlow denied this testimony, but the jury found otherwise and the same will be treated as true for the purposes of this opinion. At 6 A.M. plaintiff and his crew quit, changed their clothes, and left for Monahans in the Marrs car. About three miles east of Monahans and before they had arrived at Monahans the collision and accident occurred. One member of the crew was killed.

Plaintiff testified, as indicated above, the members of the crew made their own arrangements to ride with Marrs and paid him seventy-five cents for each round trip; that their employer had nothing whatever to do with the arrangement and did not undertake to convey them to and from their work. He testified his work ended at 6 A.M. and likewise his pay and that he came in on his own time. His testimony was also that the trip coming in on the morning of the accident was exactly as on other occasions, and had they arrived at Monahans the only difference would have

been to turn aside one-half block off the highway to the Electric Shop instead of going on up the street to his house.

The plaintiff (appellee here) seeks to sustain the judgment of the trial court on the proposition that plaintiff sustained his injuries while engaged in the course of his employment. He cites the cases of Consolidated Underwriters v. Breedlove, 114 Tex. 172, 265 S.W. 128, and Federal Underwriters Exchange v. Lehers, 132 Tex. 140, 120 S.W.2d 791.

We do not regard these cases in point. Breedlove was an automobile mechanic and was subject to call at all times and was frequently called while at his noon meal and at night. His employer usually furnished a truck for him to go to his lunch, not at regular times, but at such times as he could find time to go. If the truck was not available he used his individual car, which the employer kept in repair to compensate him for such use. In other words, the employer furnished the transportation to enable him to return promptly and to answer calls made on him when absent from the shop. On the particular occasion in question he was charged with the duty of calling at another place of business and picking up a battery. Nothing more need be said to distinguish that case from this. A reading of the case will make the distinction clear.

In the Lehers case, Lehers performed most of his work at the Calder Avenue Station where the manager of it and the other station at College Street had his headquarters. For fourteen days prior to the accident the manager had had Lehers go by the College Street Station and pick up the report and money and bring them to him at Calder Avenue Station. Lehers performed divers duties aside from the work done at the Station. It is clear he was engaged in his employer's business on the occasion of the injury and the disposition of the question sound.

 The position of the plaintiff here is no different from that of a friend or stranger who might have been at the well and on his way to Monahans and been requested by Barlow to deliver the message for him. The delivery of the message was purely incidental to the trip in and cannot be said to have originated in his work. He was not making a special trip to deliver the message, but was making the usual and ordinary return trip. Had he turned aside from his usual route to deliver the message we would have a different situation possibly, but that had not been done.

The established rule is, before an injury is compensable, it must be shown: (1) that the injury originated in the work of the employer and (2) that the injury was received while engaged in or about the furtherance of the affairs of the employer. This proposition and the views expressed herein are supported by many authorities, and we refer to a few of them, as follows: American Indemnity Co. v. Dinkins, Tex. Civ.App., 211 S.W. 949; London Guarantee & Accident Co. v. Thetford, Tex.Com.App., 292 S.W. 857; London Guaranty & Accident Co. v. Smith, Tex.Civ.App., 290 S.W. 774; and Smith v. Texas Employers' Ins. Ass'n, 129 Tex. 573, 105 S.W.2d 192. Many other cases might be cited, but citation of authorities and quotations therefrom are unnecessary.

The plaintiff here received no extra pay for the undertaking claimed by him and found by the jury; he was under no obligation to return prior to the usual time to resume his work at midnight following. We regard him outside the provisions of the statute and the rules established by the Supreme Court.

The judgment of the trial court is reversed and judgment here rendered for the defendant Company.