KIMBROUGH et al. v. INDEMNITY INS.
CO. OF NORTH AMERICA.
No. 11492.

Court of Civil Appeals of Texas. Galveston.
Jan. 28, 1943.

Rehearing Denied Feb. 17, 1943.

W. P. Hamblen and Jas. F. Bobbitt, both of Houston, for appellants.

James W. Mehaffy and Albert P. Jones, both of Houston (Baker, Botts, Andrews & Wharton, of Houston, of counsel), for appellee.

MONTEITH, Chief Justice.

This is an appeal in a workmen's compensation suit brought by appellee, Indemnity Insurance Company of North America, to set aside an award of the Industrial Accident Board in favor of appellant, Knox H. Kimbrough, for compensation benefits alleged to be due for injuries received by him in the course of his employment with Magnolia Airco Gas Products Company, who carried compensation insurance with appellee.

Appellants filed answer and cross-action for the recovery of compensation benefits in the amount of $20 per week for 200 weeks, that being the sum alleged to be due for a specific injury consisting of the total and permanent loss of the use of his left leg.

At the conclusion of the introduction of testimony on behalf of the complainant, the trial court withdrew the case from the jury and entered judgment in favor of the appellee.

The sole question presented in the appeal is the sufficiency of the evidence to raise a jury question on the issue of whether appellant Kimbrough sustained an injury in the course of his employment by Magnolia Airco Gas Products Company.

Pursuant to Rule No. 378 of the Texas Rules of Civil Procedure, the parties filed their agreed statement of the case and of the facts proven which is incorporated in the transcript in lieu of a statement of facts. In this statement it was stipulated that at the date appellant was injured, on November 22, 1941, he had been employed for four or five years as an operator in the Acetylene Gas Plant of the Magnolia Airco Gas Products Company in the City of Houston. On the day before he was injured, appellant had worked until a late hour and returned to the plant at about 8 o'clock the following morning, intending

to do some additional work. It was appellant's custom to drive his personally owned car in going to and from the plant. Several days before he sustained his injury appellant had heard an unusual noise in the car but had been unable to locate it. On this particular morning he had again heard the noise in the car. When he arrived and parked his car on the Company premises appellant discovered that he was the only employee present in his particular department. There was a company rule providing that at least two employees be present before the plant could be put in operation. While waiting for his foreman to report for work so that the plant could be opened, Kimbrough undertook to ascertain the cause of the noise in his car. At his request, the foreman of another department of the plant sent an employee of that department, Billy Reynosa, to assist appellant. Reynosa started the car while Kimbrough stood on its front bumper, with his head underneath the hood of the car for the purpose of locating the noise while the car was being driven. Reynosa accidentally drove the car into the rear of a company trailer which had been parked in front of the Kimbrough car. Kimbrough's left leg was caught between the bumper of his car and the trailer and was severely injured.

There was no company rule or requirement with reference to the manner in which employees went to and from the plant. They could use any mode of transportation they wished. Kimbrough paid the expenses and upkeep of his car, and could go to and from work in his car or by any means available.

On previous occasions, when there had been a breakdown in the plant, Kimbrough had used his private car to go to town to secure replacement parts, but he had no intention of making such use of his car on the morning in question.

Kimbrough lived on Griggs Road, outside the city limits, in the northern portion of the City of Houston. The company's plant was in the northeastern part of Houston, some five or six miles distant. At all times the Houston Electric Company bus service was available to him in going to and from work.

█ In order to recover benefits under the Workmen's Compensation Act of the State of Texas, an employee must prove not only that his injury occurred while he was engaged in or about the furtherance of the affairs or business of his employer, but also that the injury was of such kind and character as had to do with and originated in the work, trade, business or profession of the master. Not every injury which occurs at or near the place of employment is compensable. The injury must be brought about by a risk which is incidental to and arises out of the task the workman has to do in fulfilling his contract for service, and to which the employee would not be subjected but for the employment contract for service.

In the recent case of Safety Casualty Company v. Wright, Tex.Civ.App., 160 S.W.2d 238, 245, the Supreme Court passed upon a case in which the fact situation and the questions involved were similar in all material respects to those in the instant case.

In that case, Wright, the deceased, was employed as a line walker for the Magnolia Petroleum Company. Upon reaching the end of the line it was customary for him to ride the highway bus back to his home station. On the occasion made the basis of that action, the bus was forced to stop on account of a broken gas line from which gasoline was leaking. The deceased undertook to repair the broken line, and while doing so his clothes became saturated with gasoline which became ignited and Wright received fatal burns. The Supreme Court in reversing the judgments of the lower courts, said: "After a careful consideration of the question, we are compelled to the conclusion that, notwithstanding the fact that we still hold that Valentine C. Wright was in the course of his employment with Magnolia Pipe Line Company while a passenger of this bus, still it would be unreasonable, under the facts of this record, to say that he was in the course of such employment while under such bus for the purpose of making repairs thereon, either of his own volition, or at the request of the bus driver. Certainly at such time he had turned aside from the course of his employment with the Pipe Line Company, and was in the course of performing services for the bus owner or its driver." (Citing numerous cases).

█ The facts in the cited case and in the case at bar, we think, are similar in all material respects. In each instance repairs on a vehicle were being undertaken. Wright was admittedly in the course of his employment while riding on the bus. Kimbrough was assuredly not in the course of

his employment in driving his car to work. Since the court held that Wright, as a passenger on the bus, was in the course of his employment, but that he was not in the course of such employment when he undertook to assist in making repairs on the bus, it follows, we think, that the making of repairs by appellant on his personal automobile, which was being used to further his own convenience and had nothing to do with his employer's business, was not a risk incidental to or within the course of his employment with the Gas Products Company.

█ Our courts have uniformly held that, where the evidence shows that at the time of an injury to an employee, the employee is engaged in doing or attempting to do something not required of him by his contract of employment, he is not engaged in his master's business but in an enterprise of his own and that the injuries received are not compensable under the Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq.

In the recent case of Employers Reinsurance Corporation v. Brooks, Tex.Civ.App. 165 S.W.2d 785, 788, (writ refused), an employee of Frost Lumber Industries, Inc., was injured while engaged in tying bundles of flooring behind a flooring machine. At the time he received his injuries the machine behind which he was working had stopped and, while waiting for it to start, he decided to make a hammer handle out of a piece of hardwood lumber which was lying on the floor of the shed. It was not a part of his duties to make hammer handles, and he testified that he intended to use it in nailing up some saw horses of his employer in order to facilitate his work, and that he intended to also use it at home. He sustained an injury to his hand while attempting to push the piece of lumber through a ripsaw machine. The reviewing court, in reversing the judgment of the trial court and rendering judgment in favor of the insurer, held that the evidence showed that the employee was doing something for his own convenience and that there was no evidence that he was doing or attempting to do anything required of him by his contract of employment.

Similar holdings were made in the following cases involving fact situations similar in all material respects to those in the case at bar: Ætna Ins. Co. v. Burnett, Tex.Com.App., 283 S.W. 783; Texas Employers Ins. Ass'n v. Sparrow, 134 Tex. 352, 133 S.W.2d 126; United States Fidelity & Guaranty Co. v. Flanagan, 134 Tex. 374, 136 S.W.2d 210.

The facts in the instant case, we think, show conclusively that, at the time Kimbrough received his injury, he was not engaged in the furtherance of his employer's business but that he was engaged in an enterprise of his own. The requirements of his employment contract had no connection with the use of his personal automobile and he could have discharged his obligation to his employer by using other means of transportation which were available to him. Under these facts, we think that the injury complained of was not covered by the Workmen's Compensation Act.

The judgment of the trial court will be in all things affirmed.

Affirmed.