## McKIM v. COMMERCIAL STANDARD INS. CO.

### No. 13478.

Court of Civil Appeals of Texas. Dallas.
Feb. 25, 1944.

Dissenting Opinion Feb. 29, 1944.

Rehearing Denied March 31, 1944.

Gillen, Francis, Gallagher & Bean, of Dallas, for appellant.

Malone, Lipscomb, White & Seay, of Dallas, for appellee.

YOUNG, Justice.

Appellant's suit was to set aside a final ruling of the Industrial Accident Board and for recovery under the Texas Workmen's Compensation Law. Vernon's Ann. Civ.St. art. 8306 et seq. At conclusion of testimony the trial court granted motion of appellee (insurance carrier) for instructed verdict, on ground that plaintiff's injury did not arise out of or in the course of her employment; and from defendant's judgment thereon, appeal was taken.

Undisputed and material facts are these: For some years previous to the accident (January, 1942), Mrs. McKim had been employed as hatmaker for Gold-Claire Hat Company, manufacturers of ladies' hats for sale by wholesale and retail. Plaintiff's duties were performed on the second floor of the establishment; employes going to and from work by way of front street entrance through office and showroom; dressing and restroom in rear, with stairway leading to second floor where the hats were made. The work hours were from 8:15 A. M. to 5 P.M., lunch period from 12 noon to 12:45 P.M.; a time clock being used by all employes to indicate time they were on and off duty. During plaintiff's entire service with Gold-Claire, employes had been allowed to buy hats at wholesale prices; on each transaction, as Mrs. Goldberg, assistant manager, stated, the Company made a

small profit. Plaintiff testified that employes had access to office, telephone, and other facilities downstairs, with permission to eat lunch on the premises, which they usually did to avoid changing into street clothes; that on the morning in question, she had arrived at 8:15, registered in by time clock on second floor, worked until noon when she punched the clock and took off for the lunch hour. Plaintiff then started downstairs when she thought of a hat in rear of showroom that had struck her fancy a couple of days before; going to the front office and asking Mrs. Goldberg if she might buy it. The latter did not recall the particular hat, telling plaintiff to go back and bring it up to the office where she (Mrs. Goldberg) would determine if the article was for sale; that plaintiff then got the hat, returning to where Mrs. Goldberg was, when, just as she was about to hand it over, plaintiff slipped and fell, sustaining a serious knee injury. At this point, Mrs. Goldberg testified:

"Q. I will ask you to state whether or not you recollect seeing Mrs. McKim just before she received this injury? A. Yes Sir, I saw her.

"Q. Where were you? A. Sitting at my desk.

"Q. Where was Mrs. McKim? A. She was coming from the rear of the store.

"Q. Just tell the court and jury what transpired there? A. Well, sir, I was sitting at my desk with my back to her and she came from the rear from the upstairs factory and asked me if she could buy a certain hat that was hanging in the back, and I told her she would have to show me the hat before I could sell it to her, that some of the hats were samples. And I turned around to finish my work and all of a sudden I heard a scream and turned around and found that she was lying on the floor."

Mrs. Goldberg also testified that Company transactions were principally wholesale, selling to people when they came into the store; employe's hat sales being a matter of accommodation. In plaintiff's cross-examination, the request to go after the hat is given the appearance of an order; she admitting, however, that the only reason for the errand was as above narrated by Mrs. Goldberg; the latter testifying that employes were paid on a straight hourly basis; that buying of Gold-Claire hats had nothing to do with the standing or pay of employes; that she (Mrs. Goldberg) was not particularly interested in whether Mrs. McKim bought the hat or not, and the only reason for her request to get the hat was plaintiff's inquiry.

Appellant contends for compensability of injury because (1) in going after the hat, under direction of her employer, she was engaged in an act reasonably incident to her employment, the evidence showing that "the company, to secure the good will and cooperation of its employees, as well as to make a profit, had, for many years invited its employees to buy hats made by them at the wholesale price, and that the hats were kept on display on a part of the premises frequented by the employees in their daily work, and that plaintiff had been attracted to the hat in question during the forty-five minute lunch period which she, along with other employes, customarily spent on the premises, with the knowledge and permission of the employer"; (2) the occasion of plaintiff's fall was "while she was carrying out an order of her employer to go to the rear of the store and get a certain hat so that the employer could tell whether it was a hat that could be sold to employees under said arrangement, * * *;" and (3) the injuries were sustained while claimant was on premises of work, doing something in furtherance of the employer's business and reasonably incident to her employment, "even though the thing she was doing was for her personal benefit, as well as for the benefit of her employer, and even though it occurred during her lunch period."

Article 8309, Sec. 1, Subd. 4, of our Workmen's Compensation Law, defines "injury sustained in the course of employment" as including "injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere." From the beginning, the quoted definition has been held to embrace two elements; that is, to be compensable, the injury (1) must have to do with and originate in the work, and (2) must have been suffered while the employe was engaged in or about the furtherance of the employer's affairs or business. American Indemnity Co. v. Dinkins, Tex.Civ.App., 211 S.W. 949, writ refused; Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S.W. 72, 28 A.L.R. 1402; Smith v.

Texas Employers' Ins. Ass'n, 126 Tex. 573, 105 S.W.2d 192.

While the Compensation Law should receive a uniformly liberal construction "to properly care for those injured in the industries of this State" (Acts 40th Leg., 1927, c. 60, p. 84, § 2), the statute does not provide insurance against every accident happening to the workmen, though on the premises of the employer. "* * * the injury must have been received * * * while engaged in the work or business of his employer and must have resulted from a risk or hazard which was necessarily, or reasonably, inherent in or incident to the conduct of such work or business." Texas Employers Ins. Ass'n v. Grammar, Tex. Civ.App., 157 S.W.2d 701, 704, writ refused. Upon application of the foregoing test, it is apparent that the injuries in question are not compensable. The time was plaintiff's noon hour. The accident did not arise out of her duties as hatmaker, but rather from an enterprise pursuant to her own personal interest and desire. Except for her decision to purchase the hat, there would have been no consequent request that she go for it, or necessity for the trip she made. An interest, personal to plaintiff, having furnished both the occasion and the trip resulting in her injury, we do not think it can be said that at the time thereof, she was engaged in an act incident to the duties of her employment. The fact situation under review is almost identical with that presented in Industrial Commission of Ohio v. Ahern, 119 Ohio St. 41, 162 N.E. 272, 274, 59 A.L.R. 367; and in denying compensation, the Ohio Supreme Court said: "At the time of her injury the defendant in error was not acting for her employer nor engaged in its service; she was exercising a personal privilege which in no wise fell within the employment for which she had been engaged; she was seeking a personal benefit, and at the time of her injury occupied the relation of a customer to her employer, and not the relation of an employee; she was not under her employer's control. Had she exercised the privilege of going elsewhere to buy this rug, it could scarcely be maintained that her employer would be liable. The privilege which she did exercise was not required under the terms of her contract, but was purely personal, and its exercise was not incidental to the performance of any required duty. An employee who is injured when engaged, not in the service of an employer, but in pursuance of the employee's private and personal business, disconnected with the employment, is not entitled to compensation under the Workmen's Compensation Law."

The above reasoning is adopted as relevant. At the time, Mrs. McKim was not on duty, and, in the exercise of her privilege, was not engaged in anything incident to her employment. She "was seeking a personal benefit, and at the time of her injury occupied the relation of a customer to her employer, and not the relation of an employee." But appellant argues that her status was both that of customer and clerk; engaged in an errand under the employer's direction that was within the scope of the master's business, though outside her usual duties. The Ahern case, supra, is thus sought to be differentiated. Here, however, plaintiff was employed on an hourly basis and had checked out for the noon interval. The so-called employer's order must be viewed as merely incident to plaintiff's errand for the hat; the entire transaction being a personal mission in the exercise of her privilege, wholly independent of the employment or her duties thereunder.

The major factor of plaintiff's trip occurring while off duty and concerning an objective personal to herself, the resulting injury may not be said to have arisen out of and in course of the employment. On the other hand, her claim plainly falls within that class of cases of which Marks' Dependents v. Gray, 251 N.Y. 90, 167 N.E. 181, 182, is illustrative. Chief Justice Cardozo there held: "We think the accident did not arise 'out of and in the course of' any service that Marks had been employed to render. He was not making the journey to Shortsville at the request of his employer or for the purpose of doing his employer's work. He was making it in fulfillment of a promise to call for his wife at the end of the day, and bring her home in the family car. If word had come to him before starting that the defective faucets were in order, he would have made the journey just the same. If word had come, on the other hand, that his wife had already returned, he would not have made the trip at all. The employment did not bring him on the journey or expose him to its risks. If that is so, it is not 'out of the employment' that the injuries arose."

Likewise in the case at bar, it cannot be said that Mrs. McKim would have made

the trip for the hat had she decided that she did not want it. The necessity for the errand was created, not by her work but by reason of her personal desire, which had nothing to do with her employment. Cancellation by plaintiff of a purpose to buy the hat would have canceled the necessity for the trip she made. The trip being personal, so also was the risk.

Appellant cites and discusses numerous cases wherein claims more or less analogous have been held compensable; none, however, parallel in fact to the situation at hand; and whether an injury is one arising out of the employment is uniformly determinable from the facts themselves. 71 C.J., Sec. 404, p. 658.[1]

In Texas, comparable fact situations have been held not to involve liability; Insurors Indemnity & Ins. Co. v. Lankford, Tex.Civ. App., 150 S.W.2d 288, writ refused, where claimant, living at Monahans, had quit work to go home by private conveyance, his next shift beginning midnight following, and was requested in such connection to tell a Monahans repairman about generator trouble at the oil well; J. C. Penney Co. v. Oberpriller, Tex.Com.App., 170 S.W.2d 607, where claimant received permission to get his car from a repair shop and park it near the store for use after the day's work, at the same time being given a package by the manager for delivery to a bus station. Upon delivering the article and securing his car, the accident occurred on return trip to the store; Kimbrough v. Indemnity Ins. Co., Tex.Civ.App., 168 S.W.2d 708, writ refused, where claimant arrived early at plant, and, along with another employe whom his employer had sent to help him, was endeavoring to locate motor trouble in his car and sustained injury in doing so. The same general standard or test was held to exclude liability in Tom Joyce 7 Up Co.

v. Layman, Ind.App., 44 N.E.2d 998, where the employe participated after work hours in a bowling contest, as a member of the Company team, and was injured while returning from a neighboring town; the claim being that, since the employer derived a benefit from advertising its products by means of this activity, the injury was compensable.

We forego a discussion of appellant's cases in interest of brevity. Regrettable as the fact of Mrs. McKim's injuries may be, we conclude same were sustained while engaged upon a mission not required of her in the discharge of any duty for which she was employed. The judgment appealed from was therefore correct and must be affirmed.

Affirmed.

LOONEY, J., dissents.

LOONEY, Justice (dissenting).

My dissent is based upon the conviction that the evidence clearly raised a jury issue; that the trial court erred in directing a verdict for the defendant, and that the judgment below should have been reversed and the cause remanded for further proceedings, for reasons which I shall endeavor to set forth. The facts are undisputed and are set out in the majority opinion by Associate Justice YOUNG.

It is well settled in this state that an employe is entitled to compensation under the Workmen's Compensation Law for injuries received from a hazard to which he is exposed while exercising a privilege granted by the employer, the exercise of which being either directly or indirectly beneficial to the employer. The facts show indisputably that plaintiff was accidentally injured on the premises of the employer from a hazard (slippery condition of the

[1] Of appellant's citations in support of the three points of error, may be listed: Texas Employers' Ins. Ass'n v. Wright, 128 Tex. 242, 97 S.W.2d 171; Consolidated Underwriters v. Breedlove, 114 Tex. 172, 265 S.W. 128; Columbia Casualty Co. v. Kee, Tex.Civ.App., 11 S.W.2d 529; Commercial Casualty Ins. Co. v. Strawn, Tex.Civ.App., 44 S.W.2d 805; Parker v. Royal Indemnity Co., Tex.Civ.App., 59 S. W.2d 243; Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S.W. 72, 28 A.L.R. 1402; Kirby Lumber Co. v. Scurlock, 112 Tex. 115, 246 S.W. 76; Federal Underwriters Exchange v. Lehers, 132 Tex. 140, 120 S.W.2d 791; Jones v. Casu-

alty Reciprocal Exch., Tex.Civ.App., 250 S.W. 1073, error refused; Petroleum Casualty Co. v. Green, Tex.Civ.App., 11 S. W.2d 388, error refused; Thomas v. Proctor & Gamble Mfg. Co., 104 Kan. 432, 179 P. 372, 6 A.L.R. 1145; Associated Indemnity Corp. v. Billberg, Tex.Civ.App., 172 S.W.2d 157; Maryland Casualty Co. v. Stewart, Tex.Civ.App., 164 S.W.2d 800, error refused; Royal Indemnity Co. v. Hogan, Tex.Civ.App., 4 S.W.2d 93; Liberty Mut. Ins. Co. v. Boggs, Tex.Civ.App., 66 S.W.2d 787, 795 (24, 25); Galveston H. & S. A. Ry. Co. v. Currie, 100 Tex. 136, 96 S.W. 1073, 10 L.R.A.,N.S., 367.

floor) to which she was subjected while exercising the privilege to purchase hats at wholesale price, granted by the employer. On the occasion in question, plaintiff had started down the steps from the second to the first floor to telephone for a sandwich (it being during the 45-minute lunch period), noticing a hat she fancied, and being privileged to purchase same at the wholesale price, approached the assistant manager, Mrs. Goldberg, who, on the occasion, was acting manager of the business, and made inquiry in regard to the hat. As Mrs. Goldberg did not call to mind the particular hat inquired about, directed plaintiff to go and get the hat and bring it to her, and it was while complying with this direction by the general manager that plaintiff was injured.

I think it obvious that the privilege to purchase hats from the company was in no sense a bare gratuity, but was beneficial to the Gold-Claire Hat Company, both directly and indirectly; directly, as on each sale the company made the usual wholesale profit, and indirectly, the privilege extended tended to create and maintain good will among the employes, and a cooperative spirit; and incidentally, the company received the benefit of the advertising value of the public display of its hat creations worn by its employes.

The following cases, in my opinion, support the theory just advanced: In the case of Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S.W. 72, 73, 28 A.L.R. 1402, the Supreme Court laid down the following general principle, stating: "An injury has to do with, and arises out of, the work or business of the employer, when it results from a risk or hazard which is necessarily or ordinarily or reasonably inherent in or incident to the conduct of such work or business. * * * Though injuries arising from risks incidental to employment most frequently occur during hours of active labor and on premises within the control of the employer, yet they are not always so circumscribed either as to time or place." The case of Kirby Lumber Co. v. Scurlock, 112 Tex. 115, 246 S.W. 76, 78, involved these facts: Scurlock, the employe, was run over and killed by a log train while going home, riding a velocipede over the tramroad of the company, which he had used for several years in going to and from his work at the mill. On the day of the accident, he had reported at the mill as usual, but did no work, and about noon, left for home. His widow and minor chil-

dren brought a common-law action against the lumber company, alleging negligence in the operation of the log train. The lumber company alleged that it was a subscriber to the Workmen's Compensation Act, that the injury complained of was sustained in the course of Scurlock's employment, and that the sole remedy of plaintiffs was under the Workmen's Compensation Act. The Supreme Court upheld this contention, saying in part: "* * * In either event, Scurlock had the right or privilege to use the tramroad. In either event, his right or privilege was derived solely from his contract of employment. In either event, his right or privilege was an incident of his employment. In either event, in making use of the tramroad, Scurlock was performing a duty of his employment. In either event, his use of the premises facilitated his employer's business in making surer his prompt attention to so much of the employer's work as he was obligated to perform. In either event, his injury was the proximate result of a danger inherently and necessarily incident to the conduct of the master's business. * * *" In the case of Jones v. Casualty Reciprocal Exch., Tex. Civ.App., 250 S.W. 1073, 1075, writ refused, the employes of the ice company involved were given an hour off for lunch; the company permitted Jones and a few other employes to use one of its auto trucks in the accident, while Jones and another employe were returning from lunch in the company truck, there was a collision and Jones was fatally injured. The trial court denied his beneficiaries recovery, but was reversed by the Court of Civil Appeals, stating among other things, that "While the employees were not required to use the auto truck, still the inference from the facts is that it was only by virtue of working as employees that they were in fact permitted to use the truck as a means of conveyance to and from their work. Evidently the ice company was not carrying the employee without regard to the relation between them created in their contract, but was doing so because of that relation and on account of their contract." And in Indemnity Ins. Co. v. Wright, Tex.Civ.App., 69 S.W.2d 438, 440, appeal for writ dismissed, the Court of Civil Appeals said: "The contention that the negro boy entered the banana room for sleep, thus departing from his employment, is answered by evidence to the effect that employees of the Produce Company were permitted, while on duty, to nap on the premises; so, if in fact de-

ceased did enter the room for the purpose of taking a nap (in view of the evidence, the jury was warranted in so believing), that fact would not, in our opinion, constitute a departure from the course of his employment." To the same effect, see Standard Acc. Ins. Co. v. Stanaland, Tex. Civ.App., 285 S.W. 878, writ refused. I respectfully submit that the above authorities support the proposition that heads this discussion.

I also think a fact issue was raised because the evidence showed that plaintiff's engagement, at the time she slipped, fell to the floor and was injured, had a causal connection with conditions surrounding the employment, and was incidental thereto. It was solely by virtue of plaintiff's employment that she was on the premises at the time and place of the injury, and was in the exercise of a privilege that she enjoyed as an employe, that is, of access to the first floor at will.

The following unusual case, in my opinion, supports the doctrine just announced. The case of Southern Surety Co. v. Shook, Tex.Civ.App., 44 S.W.2d 425–427, writ refused, involved the following facts: Shook was a pumper on an oil lease; his duties did not require constant attendance at the well or at the shack where he resided. He kept some hunting dogs, known to his employer; and it seems that three boys, on a hunting trip, conceived the idea of robbing and murdering Shook, and lured him and his brother from the shack on a pretended wolf hunt, and when a short distance from the lease, murdered both Shook and his brother. Suit for compensation was brought by the employe's mother and her other children. Beginning the discussion, Chief Justice Hickman, speaking for the Eastland Court, posed the following question: "Did Lucien Shook's injuries result from a hazard reasonably inherent in or incident to the conduct of his work as pumper?" Answering his question, Chief Justice Hickman said: "We think they did"; and after a lengthy discussion of the case, concluded with the following pertinent language: "The Workmen's Compensation Law should not be hedged about with strict construction, but should be given a liberal construction to carry out its evident purpose. * * *" Another case illustrating the doctrine announced is that of United States Casualty Co. v. Hardie, Tex. Com.App., 299 S.W. 871, 874. Hardie, the employe, was a salesman for a produce company, and on the date of the accident, one Alexander, an employe of a neighboring concern, came into the store to borrow some articles of produce in accordance with an existing custom between the dealers, and while there, commenced to scuffle with Hardie, during which, Hardie, in order to extricate himself and prevent Alexander from throwing him to the floor, was injured. In holding that the accident was one reasonably incident to the employment, among other things, the court said: "* * * The term 'arising out of the employment,' * * * is not to be understood as being restricted and confined to the exact duties prescribed for the servant. Whatever may be incidental to the employment must necessarily belong to it. * * *" And the same doctrine was announced in Commercial Casualty Ins. Co. v. Strawn, Tex.Civ. App., 44 S.W.2d 805, 807, writ refused. Strawn was a city salesman employed by General Tire Service, Inc., of which a Mr. Blanchette was general manager. It was Mr. Blanchette's custom, personally or through employes, to entertain prospective customers at the expense of the company, by carrying them to places of amusement or to dinner. Blanchette requested Strawn to take him and two employes of a customer to a lake for a duck hunt; the four men rode in an automobile belonging to one of the guests and was driven by one of the guests; on returning from the hunt, an automobile collision occurred in which Strawn was injured. In holding that the injury was received in the course of his employment, the Court of Civil Appeals, among other, used the following language: "It was the policy of the General Tire Service, Inc., to obtain as much business as possible, and Mr. Blanchette, in the performance of his duty as general manager and in furtherance of his efforts to increase the company's business, had the authority and power, and it had been his custom, either in person or through other employees, to entertain at the company's expense its present, as well as prospective, customers. * * *" To the same effect, see Petroleum Casualty Co. v. Green, Tex.Civ.App., 11 S.W.2d 388, writ refused; Security Mut. Casualty Co. v. Wakefield, 5 Cir., 108 F.2d 273, and Ætna Life Ins. Co. v. Windham, 5 Cir., 53 F.2d 984. Under the doctrine just announced in the unusual and rather extreme cases just mentioned, I think a jury issue was clearly raised by the evidence. As an employe, plaintiff was privileged to go and be upon the first floor for various purposes; for the

use of the telephone, the dressing room, inspection of hats with view of purchasing, and, in my opinion, during the lunch hour could have loitered there, and in either instance, she would have been subjected to the hazard of slipping and falling because of the recently waxed condition of the floor.

Appellee seeks to narrow the case to the few facts involved in the hat transaction, without taking into consideration the larger group of facts of which the hat transaction was simply a part; and it seems the decision is based upon that theory, as the majority opinion states: "The time was plaintiff's noon hour. The accident did not arise out of her duties as hatmaker, but rather from an enterprise pursuant to her own personal interest and desire. Except for her decision to purchase the hat, there would have been no consequent request that she go for it, or necessity for the trip she made. An interest, personal to plaintiff, having furnished both the occasion and the trip resulting in her injury, we do not think it can be said that at the time thereof, she was engaged in an act incident to the duties of her employment."

I respectfully submit that this theory leaves out of consideration the fact that, when injured, plaintiff was upon the premises solely because she was an employe, spending the lunch hour (45 minutes) by permission of the employer, which obviously was in its interest, as the employes could immediately and without delay resume work at the expiration of the period; and besides, plaintiff testified she was privileged to go upon the first floor at will, and on the occasion, had started to the first floor to telephone for a sandwich, the telephone being located near the desk of the acting general manager; the floor having recently been rewaxed. Going down the steps, plaintiff noticed a hat she desired, went to the desk of the acting manager with view of making inquiries in regard to its purchase, and, as the acting manager was not familiar with the particular hat mentioned, directed plaintiff to go to the display department and bring the hat to the desk; in the performance of this special duty, plaintiff slipped upon the freshly waxed floor and was injured. These being the undisputed facts, I am of opinion that, under the doctrine announced in repeated decisions of our courts, a jury issue was raised; that is, the evidence showed that plaintiff was injured while performing a special service at the request of the employer, although same was outside the scope of her usual duties, yet was incidental to and within the usual course of the employer's business, which, among other things, was the sale of hats at retail.

I think it may be assumed that plaintiff was acting in a dual capacity at the time, as a customer, in a purely personal capacity, attempted to purchase a hat, as she was privileged to do, but at the time she received the injury, was acting in another capacity, that is, as an employe, was performing a service obviously within the usual course of the company's business and incident thereto, directed by the acting general manager, but for which the service would not have been undertaken and the accident would not have occurred. Supporting this theory, the Commission of Appeals, in Texas Employers' Ins. Ass'n v. Wright, 128 Tex. 242, 97 S.W.2d 171 (Syl. 4), announced the following doctrine: "Employee injured when performing at his employer's direction work outside scope of his usual duty is entitled to workmen's compensation, provided work in which he is engaged when injured is within usual course of employer's business (Vernon's Ann.Civ.St. art. 8309, § 1)." And in Maryland Casualty Co. v. Long, Tex.Civ.App., 9 S.W.2d 458, error dismissed, a similar situation was presented. Disposing of the matter, the court (Syl. 1) held: "* * * Where employee, who left his work a little before quitting time, and at foreman's request went out of his way, in going home, to deliver message to another employee, whose services were needed at the plant, was run down by automobile while crossing street on his way to deliver the message, injury was compensable, as having occurred while he was in his employer's service." To the same effect, see Commercial Casualty Ins. Co. v. Strawn, Tex.Civ.App., 44 S.W.2d 805, heretofore cited. In view of the undisputed facts, I am of opinion that, under the doctrine announced in the cases just cited, a jury issue was raised, hence the case should have been submitted to the jury.

The Texas cases cited in the majority opinion presenting similar facts, are Insurors Indemnity & Ins. Co. v. Lankford, Tex.Civ.App., 150 S.W.2d 288, writ refused, and J. C. Penney Co. v. Oberpriller, Tex. Com.App., 170 S.W.2d 607. The material difference between these cases and the case at bar is that, in the cited cases, the employe was not injured while in the perform-

ance of the special duty imposed by the employer; in the Lankford case, the injury was sustained before the performance of the special duty was undertaken; and in the Penney case, the injury was received after the special duty had been performed. The only other Texas case cited is that of Kimbrough v. Indemnity Ins. Co., Tex.Civ. App., 168 S.W.2d 708, writ refused, where the employe was injured while attempting to locate trouble in the motor of his car. This work, begun by the employe on his own initiative, on his own car, for his own personal benefit, was not at the instance of the employer; in fact, it seems that the only connection the employer had with the transaction was that the car was parked upon its premises. I submit therefore that neither of the Texas cases cited in support of the majority decision is in point.

The other cases cited are from other jurisdictions, and it must always be borne in mind that such decisions are predicated on the statutes peculiar to the respective states. But an examination of these cases reveals material factual differences. In the case of Industrial Commission of Ohio v. Ahern, 119 Ohio St. 41, 162 N.E. 272, 274, 59 A.L.R. 367, the employe was exercising a privilege granted by the employer to purchase a rug at discount, and left the floor on which she worked for another floor of the department, and while in the act of inspecting a rug, it slipped from under her, causing the fall and the injuries complained of. The employe, it seems, was acting both as customer and clerk at the time, waiting on herself, and was not in the performance of any special duty; besides, as disclosed in the opinion, the statute of the State of Ohio is materially different from the liberal provision of the statute of this state. The court said: "Under section 35, art. II, of our Constitution, and the law enacted pursuant thereto, the phrase 'in the course of * * * employment' connotes an injury sustained in the performance of some required act done directly or indirectly in the service of the employer." Compared with the liberal provision of our statute, as interpreted by our courts, the statute of the State of Ohio is quite restricted; in fact, places the employe somewhat in a strait jacket, limiting recovery to those injuries received in the performance of some specifically required act. In the case of Marks' Dependents v. Gray, 251 N.Y. 90, 167 N.E. 181, from which the majority opinion quotes Judge Cardozo, the facts show that when the injury was received, performance of the special service imposed had not been entered upon, hence the injury had no relation whatever to the performance of service never undertaken. The other case cited was that of Tom Joyce 7 Up Co. v. Layman, Ind.App., 44 N.E.2d 998, where the employe who had participated, after work hours, in a bowling contest, was injured. The company had no connection whatever with the team, which was organized by a Mr. Utley, an independent distributor at Henderson, Ky., but not an employe of the "7 Up Company," although the bowling team was known as the "7 Up Team." Of course, it is not surprising that the decision resulted as it did, as the company had no connection whatever with the transaction.

For the reasons heretofore stated, I think a jury question was raised, that the case should have been submitted, therefore think the majority erred in affirming the judgment below.