## KNIPE v. TEXAS EMPLOYERS INS. ASS'N.

### No. 2820.

Court of Civil Appeals of Texas. Eastland.

Nov. 3, 1950.

Rehearing Denied Dec. 1, 1950.

Scarborough, Yates, Scarborough & Black, Abilene, for appellant.

McMahon, Springer & Smart, Abilene, for appellee.

GRISSOM, Chief Justice.

This is a Workmen's Compensation case. Max Knipe was an employee of Moutray-Moore Drilling Company. While returning from the site of a well, being drilled by said company, near Hamlin to Abilene, where he lived, with instructions from the tool pusher in charge of his crew to report to his employer's office in Abilene that the pipe had been set in their well, and while traveling along the same route he ordinarily traveled returning home from work,

Knipe was injured in an automobile accident. A jury found that he sustained the injury in the course of his employment. The court sustained the insurance company's motion for judgment notwithstanding the verdict, on the theory that there was no evidence that Knipe was in the course of his employment when injured, and rendered judgment for the insurance company. Knipe has appealed. The sole question presented is whether there is evidence to sustain the jury's finding that Knipe was injured in the course of his employment.

In answering this question we can consider only the testimony tending to support said finding. The following is the substance of such testimony.

Mr. Rathmall, the driller of the crew with which Max Knipe worked, testified there was no telephone at the rig; that before the crew had finished its eight hour tour and after the cement had been poured, H. H. Knipe, the tool pusher, told the crew to go by the employer's office and leave word that the pipe had been set; that the office always wanted to know how everything was progressing at the well; that if the tool pusher gave an order to report something to the office it was necessary to do so; that the crew was paid for eight hours, although they were on the job at the well only five.

Mr. DePrang testified that Max Knipe was driving the car at the time of the accident; that the tool pusher told the crew to report to the Moutray-Moore office in Abilene what was happening at the well; that it was the job of either the driller or Max Knipe, the driver of the car, to deliver messages; that, when the crew went up Pine Street on their way home, the Moutray-Moore office was a short distance off Pine Street; that the homes of the members of the crew were closer to Grape Street than to Pine and, usually, in returning home from the well, they went up Grape Street, unless they were going by the Moutray-Moore office.

H. H. Knipe, the tool pusher, testified that he told the crew to go on in and report to Mr. Moore the time the pipe was set; that time was important in the oil business; that when he told the crew to go in there was other work to be done at the well; that he

considered getting this information to Mr. Moore more important than having them do the work at the well; that Mr. Moore was always anxious to know when the pipe was set and that was the reason he sent the crew in three hours early, instead of having them work the remainder of the tour and finish their eight hour tour at the well; that they paid the crew, including Max Knipe, for eight hours, instead of the five hours they actually worked at the well, because he figured the crew would put in eight hours by the time they made this report to the Moutray-Moore office.

Max Knipe, the appellant, testified that the tool pusher instructed him to go by the Moutray-Moore office and report what time they set the pipe; that it was necessary that Mr. Moore have this information.

Mr. Moore testified that the office of his company was just around the corner off Pine Street, probably 50 feet. He further testified that if the tool pusher instructed a member of the crew to come to Abilene and notify him of some development at the well that he would expect to pay him for it; that this had been their custom in the past.

■ The substance of appellee's contention is that Max Knipe, as a matter of law, was not in the course of his employment when injured because he was then traveling along a highway that he would have traveled had he been going to Abilene solely for the purpose of returning home; that he was injured before he reached the point where he would have deviated from his usual route home in order to deliver the message and that delivering the message was neither the sole nor principal cause of Knipe being on the highway at the place of the collision. In this connection, appellee cites Insurors Indemnity & Insurance Company v. Lankford, Tex.Civ.App., 150 S.W.2d 288, 290. In that case the claimant was told by the tool pusher that when he got to Monahans, where he lived and would naturally return after his tour was finished, to tell a certain person to come out and get the generator and repair it. After his tour was completed, Lankford and his crew left for Monahans. Before he got to Monahans Lankford was injured. He testified that his trip into Monahans on the day of the

accident was made exactly as it was on all other occasions returning home from work, except that if he had arrived in Monahans before the accident he would have turned a half block off his homeward route to an electric shop to deliver the message, instead of going directly to his home. The court held that delivery of the message was purely incidental to the trip home and did not originate in his work; that he received no pay for delivering the message; that he did not make a special trip to deliver the message but was making the usual trip home from work and that, as a matter of law, he was not within the course of his employment when injured. The court said that if he had turned aside from his usual route to deliver the message a different situation might have been presented. This case did not reach the Supreme Court.

There is a substantial difference between the facts of that and the present case. Here, Knipe was going to Abilene at the time he was injured for the purpose of delivering the message and then go to his home; he was injured during his tour of duty; he was paid for the time used to travel from the well to the Moutray-Moore office to deliver the message; his work at the well was stopped three hours before the end of his tour of duty and he was directed to then go to Abilene and deliver the message. We think it is not controlling that it was expected that he would, after delivering the message, return to his home in the same city where he was to deliver the message.

Appellee also cites J. C. Penny Co. v. Oberpriller, 141 Tex. 128, 170 S.W.2d 607 and McKim v. Commercial Standard Insurance Company, Tex.Civ.App., 179 S.W.2d 357, (WR). In the Oberpriller case the claimant, who was a clerk in a store, got permission from the manager to go to a garage for his own car, get it and park it nearer the store for his own convenience. The manager gave him a package to deliver. He delivered the package, then went to the garage and got his car and, while returning from the garage to the store in his automobile, was injured. The claimant had completed the mission for his employer and was driving his car from the garage to the store, solely for his own convenience, when he was injured.

In the McKim case, Mrs. McKim was a hat maker for a hat manufacturer. During her lunch hour Mrs. McKim saw a hat she wanted and went to the manager's office to ask if she might buy it. The manager did not remember the hat and told her to bring the hat to the office and she would decide whether it was for sale. She got the hat and, as she was returning to the manager's office, fell and was injured. The court held that, as a matter of law, the injury was not sustained while she was acting in the course of her employment. The claimant simply was engaged in buying a hat for herself during her lunch hour. These cases are clearly distinguishable on the facts from the instant case.

An injury sustained by an employee returning home from work may, under some circumstances, be compensable as arising out of and in the course of his employment, as where he is directed to perform some duty in connection with his employment on his way home. It has been held in some jurisdictions that in order to have such effect the performance of such duty must have necessitated or have been the occasion for such traveling. See 58 Am.Jur. 726, Sec. 220.

In Liberty Mutual Insurance Company v. Nelson, Tex.Civ.App., 174 S.W.2d 103, 104, affirmed 142 Tex. 370, 178 S.W.2d 514, 516, the insurance company contended there was no evidence to support the finding that Nelson was acting in the course of his employment when injured. Nelson was killed while traveling from Texas City, where he was painting for his employer, to Houston. Before starting he said he was going to purchase paint and brushes necessary in the work in which he was engaged. Nelson lived in Houston. The insurance company contended he was making the trip to Houston primarily to look at a house and visit his home and that his purpose of getting supplies was merely incidental to his trip home. The Supreme Court said: "We cannot say that the evidence in this record shows such to be a fact, as a matter of law. It is true that Mr. Nelson lived in Houston,

where he and his wife kept house in a rented home, but the wife testified that Mr. Nelson only came home on week ends, and that she knew nothing of any intention to move. Mr. Nelson did state to the witness Reynolds something about a house, and said he was going to look it over Saturday or Sunday, but nothing was said about going to Houston for that purpose. To the contrary, he said he was going to Houston to get paint and brushes; and this trip was made on Wednesday, not on a week end."

The Supreme Court held that a fact question was presented as to whether Nelson was acting in the course of his employment at the time of his injury. If controlling, it cannot be said in the present case, as a matter of law, that the primary purpose of Knipe's trip was to return to his home.

In Maryland Casualty Company v. Stewart, Tex.Civ.App., 164 S.W.2d 800 (RWM), Mrs. Stewart's son was going to use her automobile to go from Abilene to Stamford to see about purchasing an automobile. She concluded that she would go with him and while in Stamford solicit sales for her employer. She was unable to make sales because she was out of her employer's credit territory. While returning to her home she was injured. This court, in an opinion by Judge Leslie, held that it was a question of fact whether she was in the course of her employment when injured. We held, in effect, that the fact that one of the purposes of the trip was personal to the employee did not, as a matter of law, prevent her from being in the course of her employment. Judge Leslie quoted the following from Marks' Dependents v. Gray, 251 N.Y. 90, 167 N.E. 181, 183: "We do not say that service to the employer must be the sole cause of the journey, but at least it must be a concurrent cause. To establish liability, the inference must be permissible that the trip would have been made though the private errand had been canceled. * * * The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own."

He also quoted the following from Judge Williams' opinion in Galveston, H. & S. A.

Ry. Co. v. Currie, 100 Tex. 136, 96 S.W. 1073, 1074, 10 L.R.A.,N.S., 367: "It is in cases of the character supposed, where there has been a mingling of personal motive or purpose of the servant with the doing of his work for his employer, that much of the difficulty and conflict of opinion have arisen in determinig whether or not the wrong committed should be ascribed to the master or be regarded as the personal tort of the servant alone. It is now settled, in this state at least, that the presence of such a motive or purpose in the servant's mind does not affect the master's liability, where that which the servant does is in the line of his duty, and in the prosecution of the master's work."

He also quoted the following from 39 C.J. 1297: "* * * Where the servant is, notwithstanding the deviation, engaged in the master's business within the scope of his employment, it is immaterial that he joined with this some private business or purpose of his own." See also 57 C.J.S., Master & Servant, § 574.

In several Texas cases it has been held that the mere mixing of the employee's personal matters or missions with those of his employer did not, as a matter of law, remove the employee from the course of his employment. See Associated Indemnity Corp. v. Billberg et al., Tex.Civ.App., 172 S.W.2d 157, 161; Liberty Mutual Insurance Co. v. Boggs et al., Tex.Civ.App., 66 S.W.2d 787, 795 (Writ Dis.); Smith v. Conner, Tex.Civ.App., 211 S.W.2d 630, 632; Texas Power & Light Co. v. Evans, Tex.Civ.App., 225 S.W.2d 879, 883. In others, the test indicated is whether the trip would have been made regardless of the employer's business, that is, whether performance of a mission for the employer necessitated, or was the occasion for the trip. See 58 Am.Jur. 726; McKim v. Commercial Standard Ins. Co., Tex.Civ. App., 179 S.W.2d 357, 359 (Writ Ref.).

The jury found that Knipe sustained his injury while working in the course of his employment by Moutray-Moore Drilling Company. In connection with this issue, the court instructed the jury that an injury is not sustained in the course of his employment while an employee is returning home

from work and not on a mission for his employer. The evidence sustained the finding. Under the circumstances, we are not concerned with any fine distinctions suggested in the authorities cited because the evidence is sufficient under any of them. See 57 C.J.S., Master & Servant, § 531, p. 150.

Under the circumstances, it is our duty to reverse the judgment and order judgment entered in accord with the verdict. Sanders v. Harder, Tex.Sup., 227 S. W.2d 206, 210; LeMaster v. Fort Worth Transit Co., 138 Tex. 512, 160 S.W.2d 224, 227; Nardis Sportswear v. Simmons, Tex. Sup., 218 S.W.2d 451, 455. It is so ordered.